**2014-1721**

# United States Court of Appeals
# for the Federal Circuit

ACME SCALE COMPANY, INC.,

*Appellant,*

v.

LTS SCALE COMPANY, LLC,

*Appellee*

*On Appeal from the United States Patent and Trademark Office Patent Trial and Appeal Board in Reexamination No. 95/001,401, Howard B. Blankenship, Karl D. Easthom, and Stanley M. Weinberg, Administrative Patent Judges*

## BRIEF OF APPELLANT ACME SCALE COMPANY, INC.

GRANT H. PETERS
DANIEL P. ALBERS
BARNES & THORNBURG LLP
One North Wacker Drive
Suite 4400
Chicago, IL 60606
312-357-1313
E-mail: grant.peters@btlaw.com

*Attorneys for Appellant, Patent Owner, Acme Scale Company, Inc.*

October 14, 2014

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Acme Scale Company, Inc. certifies the following:

1.     The full name of every party or amicus represented by us is:

      Acme Scale Company, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

      Acme Scale Company, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by us is:

      None

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by us in the trial court or agency or are expected to appear in this court are:

      Barnes & Thornburg LLP
      Grant H. Peters
      Daniel P. Albers

      Respectfully submitted,

Date: <u>October 14, 2014</u>      <u>/s/ Grant H. Peters</u>
      Grant H. Peters
      Daniel P. Albers
      Attorneys for Appellant
      Acme Scale Company, Inc.

# **TABLE OF CONTENTS**

Page

CERTIFICATE OF INTEREST.............................................................i

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES.............................................................iv

STATEMENT OF RELATED CASES ..............................................1

JURISDICTIONAL STATEMENT ..................................................1

STATEMENT OF THE ISSUES .......................................................2

STATEMENT OF THE CASE ...........................................................3

STATEMENT OF THE FACTS .........................................................3

SUMMARY OF THE ARGUMENT...................................................5

ARGUMENT......................................................................................7

    I.    A Table with Rollers is Not a "Material Handling Vehicle" as Claimed in the Acme Patent.................................................7

    II.    The Bourgoin Reference Does Not "Anticipate" the Acme Claims Under 35 U.S.C. §102(b). ......................................13

    III.    The Bourgoin Reference Does Not Support a Rejection Under 35 U.S.C. §103(a) Because the Use of the "Table" in Bourgoin "Teaches Away From" the Claimed Invention. ...................18

    IV.    Even Assuming *Arguendo* That the Board Properly Construed "Material Handling Vehicle" as to the Bourgoin Reference the Board Erred in Concluding that Claim 22 was Not Patentable and Should Remand to Allow Amendment of Claim 22 to Place it in Independent Form for Allowance. ...............................23

CONCLUSION AND STATEMENT OF RELIEF SOUGHT............24

ADDENDUM

Decision, Right of Appeal Notice, United States Patent and
Trademark Office, Reexamination Confirmation
August 15, 2011 ................................................................................ A326-338

Decision, United States Patent and Trademark Office,
Before the Patent Trial and Appeal Board, May 18, 2013 ..................... A1-16

Decision on Rehearing, United States Patent and Trademark Office,
Before the Patent Trial and Appeal Board, April 29, 2014 .................. A17-27

Acme Patent United States Patent No. 7,757,946 ................................ A30-39

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE
REQUIREMENTS

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*In re Abbott Diabetes Care Inc.*,
    696 F.3d 1142 (Fed. Cir. 2012) ......................................................7

*In re America Academy Sci. Technology Ctr.*,
    367 F.3d 1359 (Fed. Cir. 2004) ......................................................7

*In re Bond*, 910 F.2d 831
    (Fed. Cir. 1990).............................................................................7

*Flo Healthcare Solutions, LLC v. Kappos, and Rioux Vision, Inc.*,
    697 F.3d 1367 (Fed. Cir. 2012) ....................................................18

*In re Gurley*, 27 F.3d 551
    (Fed. Cir. 1994)...........................................................................20

*In re ICON Health & Fitness, Inc.*, 496 F.3d 1374
    (Fed. Cir. 2007)...........................................................................12

*In re Morsa*, 713 F.3d 104
    (Fed. Cir. 2013)...........................................................................14

*Phillips v. AWH Corp.*, 415 F.3d 1303
    (Fed. Cir. 2005).............................................................................7

*Scripps v. Genentech Inc.*,
    927 F.2d 1565 (Fed. Cir. 1991) ....................................................14

*In re Skvorecz*,
    580 F.3d 1262 (Fed. Cir. 2009) ....................................................12

*In re Suitco Surface, Inc.*,
    603 F.3d 1255 (Fed. Cir. 2010) ...........................................7, 12, 13

*Synqor, Inc. v. Artesyn Technologies, Inc.*,
    709 F.3d 1365 (Fed. Cir. 2013) ....................................................14

*In re Vaeck*,
   947 F.2d 488 (Fed. Cir. 1991) ......................................................19

*W.L. Gore & Associate v. Garlock*,
   721 F.2d 1540 (Fed. Cir. 1983) ..................................................19

## FEDERAL STATUTES

28 U.S.C. § 1295(a)(4)(A) .........................................................1

35 U.S.C. § 102(b) ..................................................................14

35 U.S.C. § 103(a) ..................................................................19

35 U.S.C. § 306 .......................................................................1

Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ......14

## STATEMENT OF RELATED CASES

Appellant, and its counsel know of no other appeals or actions related to the present reexamination on appeal.

## JURISDICTIONAL STATEMENT

The basis for subject-matter jurisdiction is under 35 U.S.C. §306 in which a patent owner involved in a reexamination proceeding may appeal and seek court review with respect to any decision adverse to the patentability of any claims of the patent.

The basis for The Court of Appeals' jurisdiction is under 28 U.S. Code § 1295(a)(4)(A) under which The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from a decision of the Patent Trial and Appeal Board of the United States Patent and Trademark Office (the "Board") with respect to a reexamination at the instance of a party who exercised that party's right to participate in the applicable proceeding before or appeal to the Board.

The filing dates of the Notice of Appeal and Appellant's Brief present a timely appeal. The judgment appealed from is a final order (A17-A27)[1]. The reexamination decision by the United States Patent and Trademark Office

---

[1] "A" refers to the Joint Appendix filed by the parties. Portions of the Joint Appendix are attached to this Brief as an Addendum.

Examiner affirming *United States Patent No. 7,757,946* to Kienzle-Lietl (the "Acme Patent") (A30-A39) was appealed by the Requestor to the Board which overturned the Examiner's decision allowing original claims 9, 10, and 20-22 (Dec. May 18, 2013, the "Board Decision") (A1-A16).  Patent owner timely requested rehearing ultimately resulting in the decision confirming the decision by the Board (Decision of April 29, 2014, the "Rehearing Decision") (A17-A27).  Appellant timely filed its notice of appeal on June 24, 2014 (A465-A481).

## STATEMENT OF THE ISSUES

(1)     Whether the Board erred in finding that the Bourgoin reference discloses, teaches or suggests a material handling vehicle.

(2)     Whether the Board erred in concluding that claims 9, 10, and 20-22 are not patentable under 35 U.S.C. §102(b) based on Bourgoin.

(3)     Whether the Board erred in concluding that claims 9, 10, and 20-22 are not patentable under 35 U.S.C. §103(a) based on Bourgoin.

(4)     Whether the Board erred in concluding that claim 22 was not patentable and should remand the reexamination to the USPTO to allow amendment claim 22 to place it in independent form for allowance.

## STATEMENT OF THE CASE

This is an appeal under 35 U.S.C. §306 of the Patent Trial and Appeal Board's (the "Board") Decision on appeal of *Reexamination Control No. 95/001,401* and on Rehearing finding claims 9, 10, and 20-22 of United States Patent No. 7,757,946 unpatentable under 35 U.S.C. §102(b) and/or 35 U.S.C. §103(a) (A17-A18).

## STATEMENT OF THE FACTS

This matter is based on *United States Patent No. 7,757,946* issued July 20, 2010 in the name of Kathleen G. Kienzle-Lietl (the "Acme Patent") (A30-A39) and assigned to Acme Scale Company, Inc. ("Acme").  After issuance of the Acme Patent a reexamination request was filed by an Acme competitor who had been placed on notice of infringement of the Acme Patent, LTS Scale Company, LLC ("LTS"), *Reexamination Control No. 95/001,401.*  The reexamination proceeded in the ordinary course resulting in a decision by the United States Patent and Trademark Office ("USPTO") Examiner of August 15, 2011 ("USPTO Decision") (A326-A339) acknowledging that "Claims 9, 10, and 20-22 have been confirmed throughout prosecution of the *inter partes* reexamination proceeding."  (A332). Among other claims in the Acme Patent, claims 9, 10, and 20-22 were confirmed in the original form as issued in the original patent issuance and without amendment.

3

LTS then filed an appeal from the USPTO Decision.  The appeal resulted in the initial Decision by the Patent Trial and Appeal Board of May 18, 2013 ("Board Decision") (A1-A16) reversing the USPTO Decision confirming and allowing claims 9, 10, and 20-22.  Acme filed a request for rehearing from the Board Decision, resulting in a new decision by the Board of April 29, 2014 ("Rehearing Decision") (A17-A27), maintaining the prior Board Decision that claims 9, 10, and 20-22 are not patentable under 35 U.S.C. §102(b) and 35 U.S.C. §103(a).  The Board modified the issue on appeal to be "Does Bourgoin Disclose, Or Teach Or Suggest, A Material Handling Vehicle?" (A20).

Acme cited Bourgoin to the United States Patent and Trademark Office ("USPTO") at the very beginning of the prosecution in its Information Disclosure Statement filed by the Applicant (A535).  Four separate USPTO Examiners[2] examined the Acme Patent application and the claims in this application, with full knowledge of Bourgoin at every phase of examination, and <u>never</u> raised any issue that it disclosed, taught, or suggested a "material handling vehicle", as used in the claims of Acme's patent.  The last examiner in the reexamination was directly presented with arguments by both parties to the reexamination regarding Bourgoin.

---

[2] *Examiner 1*: Merlin Brito Peguero (including of record - Jared J. Fureman, *P.E.*, Lisa Caputo, *P.E.*, and Steven S. Paik, *P.E.*);
*Examiner #2*: Kumiko Koyama, P.E.;
*Examiner #3*: Thien M. Le, P.E.; and
*Examiner #4*: Lynne H. Browne (including multiple different conferees at multiple events as required by the UPSTO reexamination rules).

The examiner in the reexamination allowed claims 9, 10, and 20-22 in their original unamended form over Bourgoin.

The USPTO Examiner issued a Communication including the Right of Appeal Notice (A329) in which the Examiner acknowledged "Claims 9, 10, and 20-22 have been confirmed throughout prosecution of the *inter partes* reexamination proceeding." (A332).

On appeal from the findings on reexamination affirming all allowed and issued claims, the Board reversed the four Examiners and found for the first time, without any evidence from one of ordinary skill in the art, that the table with rollers of Bourgoin was a "material handling vehicle" as claimed in the Acme Patent. The Board reached the same conclusion on rehearing. Acme now appeals.

## SUMMARY OF THE ARGUMENT

The issues in the present appeal are whether the Board in its Rehearing Decision (and in the initial Board Decision) erred regarding its legal conclusions of claim interpretation, anticipation and obviousness.  The two decisions by the Board both turned on an interpretation of *United States Patent No. 5,854,679* to Bourgoin (hereafter "Bourgoin") (A486) and whether a "table fitted with rollers" (A496, col. 2:38) supports a finding of anticipation under 35 U.S.C. §102(b) and obviousness under 35 U.S.C. §103(a).

Bourgoin is pivotal to the decision because it is Acme's contention that the "table" in Bourgoin _cannot_ be _reasonably_ _interpreted_ to be a "material handling vehicle" as claimed in claims 9, 10, and 20-22 and thus fails to support the rejections under 35 U.S.C. §102(b) and 35 U.S.C. §103(a).

On _de novo_ review by this court, the Board's legal conclusion that Bourgoin teaches a "material handling vehicle" is wrong and should be reversed. The table with rollers of Bourgoin is not a material handling vehicle. It is not a "vehicle." It does not "handle materials." It sits in place. It is passive, not active. While in place it has a scale on its tabletop that can make measurements. It is only moved on its rollers so it can be placed somewhere else, in a passive position. It is not moved on its rollers in order to transport or handle materials. There is no indication the table can or ever would make measurements while it was moving. Bourgoin teaches away from that.

Therefore, it was legal error for the Board to interpret the claim element "material handling vehicle" so broadly as to encompass the table with rollers of Bourgoin, it was error (both legal and factual) to then conclude that Bourgoin anticipates the claims at issue and it was error (again, both legal and factual) to conclude that Bourgoin renders obvious the claims at issue. The Court should reverse the Board's erroneous decisions and reinstate issued claims 9, 10, and 20-22 as originally confirmed by the USPTO Examiner in the present reexamination.

As to claim 22, it is allowable even assuming, *arguendo*, the Board's rulings as to

Bourgoin were correct, and should be allowed on appeal.

## **ARGUMENT**

I.    **A Table with Rollers is Not a "Material Handling Vehicle" as Claimed in the Acme Patent.**

Standard of review:  The Board's error -- the misinterpretation of the claim

construction -- is an issue of law reviewed *de novo*.  *In re Abbott Diabetes Care*

*Inc.*, 696 F.3d 1142 (Fed. Cir. 2012) (citing *In re Am. Acad. Sci. Tech Ctr.*, 367

F.3d 1359, 1363 (Fed. Cir. 2004)).

Although the PTO emphasizes that it was required to give all claims their

broadest reasonable construction:

> [T]his court has instructed that any such construction be '*consistent with the specification*, . . . and that claim language should be read in the light of the specification as it would be interpreted by one of ordinary skill in the art.'

*In re Suitco Surface, In*c., 603 F.3d 1255, 1260 (Fed. Cir. 2010) (citing *In re Bond*,

910 F.2d 831, 833 (Fed. Cir. 1990).

> Indeed, 'the specification is always highly relevant to the claim construction analysis.  Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'

*In re Abbott Diabetes Care Inc.*, 696 F.3d 1142 (Fed. Cir. 2012) (citing *Phillips v.*

*AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*).

A table with rollers is not a "material handling vehicle" as set forth and

claimed in the Acme Patent.  Bourgoin "relates to a system for measuring the

characteristics of an object." (A496, col. 1:5-6). Bourgoin discloses a table but does not refer to this table as being a vehicle in any form or as providing the function of a vehicle. In fact, the only reference to the term "vehicle" in the entire Bourgoin patent is to distinguish a prior art patent which is used to measure objects such as "vehicles." (A496, col. 1:26).

Bourgoin provides specific detailed facts that it is <u>not</u> a "material handling vehicle". Bourgoin specifically states that "the system according to the invention has the *advantage* that it is a *passive system* <u>undisturbed</u> by the surrounding industrial environment." (A496, col. 2:56-58, emphasis added). Bourgoin also asserts specific distinctions between the invention in Bourgoin and the "state of the prior art" (A496, col. 1:13-14), citing prior art that can be used with "vehicles". However, it notes as to those that "there are many disadvantages in the systems described" (A496, col. 1:56-57). Bourgoin specifically states that the prior art (such as systems used with vehicles) "may be disturbed by the ambient industrial environment". (A496, col. 1:61-62). Further, Bourgoin notes that:

> There may be *severe constraints* in the environment in which the system according to the invention is used: . . .
>> the *machine* may be moved in workshops or to other sites,
>> protection against excessive vibration during transport in alleys or
> between different sites.

(A486, col. 1:66-67 – col. 2:6-8, emphasis added).

Bourgoin states that the "the system according to the invention is placed on a table 21 fitted with rollers, so that it can be displaced *to suit the user's needs*, and cameras are fitted on a portal frame 22."  (A497, col. 3:41-44, emphasis added).  While the rollers might be helpful to move the table, Bourgoin specifies that its system solves a problem in the prior art because the Bourgoin invention has the advantage that it is <u>undisturbed</u>.  Bourgoin's table with rollers is not a vehicle used to transport the articles dimensioned by the system.

Bourgoin also does not disclose, teach or suggest any "active dimensioning" of an article carried on a material handling vehicle as set forth in the claims of the Acme Patent.  To the contrary, Bourgoin specifically states that its system is "a passive system undisturbed by the surrounding industrial environment". (A496, col. 2:57-58).

In contrast, the Acme Patent is specifically entitled as a "*Material Transport In-Motion Product Dimensioning System and Method*" (A30, A36, col. 1:1-3, emphasis added).  It is specifically described in the Acme Patent that the system disclosed is different from the type disclosed in Bourgoin.  This is not surprising as Bourgoin was cited by Acme in its Information Disclosure Statement at the start of the prosecution (A533-A537).  Further, the Background and Summary section of the Acme Patent distinguished the disclosed invention from systems like Bourgoin:

> Current systems employ a variety of techniques, including stationary
> or static dimensioning or material dimensioning.  Conveyor systems

also exist that pass objects of various dimensions through laser curtains, or image such objects using cameras, that then use computers to determine dimension. In such systems, the product is placed on a conveyor and is conveyed through a U shaped tunnel that uses laser scanning to capture the dimension in motion. Such systems can be effective for small parcels that are bundled downstream of the conveyor. However, this process can be time consuming for applications that require large quantities of products, possibly of varying sizes, such as, for example, quantities that fill an entire forklift pallet, or lift truck. Current systems present several inefficiencies in this situation related to unloading the truck, passing the items individually through the conveyor, and reloading the truck. There is a need to scan an entire pallet or entire truckload contemporaneously, in a fast, automated process.

(A36, col. 1:29-46).

The Acme Patent identifies problems associated with Bourgoin-type systems that are intended to be used in a "stationary or static" (A36, col. 1:30) application, or, as described by Bourgoin, as "a passive system undisturbed by the surrounding industrial environment." (A496, col. 2:57-58).

The device shown in Bourgoin suggests that a small object can be handled on a conveyor attached to the table. Such a conveyor is shown and described in Bourgoin: "objects 40 (reference 23 above) transported on a conveyor belt 41 pass in front of a photoelectric cell 42 that controls the startup of the system according to the invention 43." (A499, col. 7:16-21).

Bourgoin <u>never</u> discloses, teaches, or suggests using the <u>table</u> itself to transport anything. Bourgoin <u>never</u> discloses, teaches, or suggests putting an

10

object, product, or article on the table and then rolling the table to transport the

article, and then dimensioning the product while the table is in motion.

> The Acme Patent further states in the Background and Summary:

> Briefly, and in accordance with the foregoing, disclosed is a system
> and method for determining the dimension and weight of products on
> or in forklifts, pallets or lift trucks.  One embodiment of the present
> and method employs a tunnel or some other defined space defining a
> space sufficient to allow passage of a *material handling vehicle*.

(A36, col. 1:47-52, emphasis added).

> Another embodiment of the present disclosure employs one or more
> dimensioning device(s) mounted at a location on a lift truck.  This
> feature allows the lift truck to become a mobile product dimensioning
> system.

(A36, col. 1:66 - col. 2:2, emphasis added).  In the Background and

Summary the Acme Patent provides significant support for how a person of

ordinary skill in the art would reasonably interpret the meaning of a

"material handling vehicle" and how the dimensioning system is used with

such a "material handling vehicle" such as a lift truck.  Bourgoin provides

significant support for how a person of ordinary skill in the art would

reasonably interpret that the table with rollers is not a "material handling

vehicle".

The Acme Patent refers to a "material handling vehicle" in

independent claims 9 and 20.  The Acme Patent provides a specific

definition of "material handling vehicle":

> The term material handling vehicle is meant to broadly include <u>transportation</u> vehicles such as, for example, but not limited to, a fork <u>lift truck</u>, a <u>flatbed truck</u>, or a <u>pallet truck</u>.

(A36, col. 2:38-41, emphasis added).  The Acme Patent describes the disclosed invention as employing "one or more dimensioning device(s) mounted at a location on a lift truck.  This feature allows the <u>lift truck</u> to become a mobile product dimensioning system." (A30, col. 1:67- col. 2:2, emphasis added).

The Court reviews the Board's claim interpretations *de novo*.  While the interpretation of the term "material handling vehicle" in the Acme Patent claims is to be given its broadest <u>reasonable</u> interpretation consistent with the specification, (e.g. *In re Suitco Surface, In*c., 603 F.3d 1255 (Fed. Cir. 2010); citing *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir.  2007)) it cannot be used to give "claims a legally incorrect meaning." *In re Skvorecz*, 580 F.3d 1262 (Fed. Cir. 2009).  Moreover, while the entire patent disclosure is reviewed to discern the meaning it must be consistent with how it would be interpreted by a person having ordinary skill in the art *In re Suitco Surface, In*c., 603 F.3d 1255, 1260 (Fed. Cir. 2010).  Perhaps, most importantly, the "broadest reasonable interpretation" maxim used in prosecution does not give the Board "an unfettered license to interpret claims to embrace anything remotely related to the claimed invention." *In re*

*Suitco Surface, In*c., 603 F.3d 1255, 1260 (Fed. Cir. 2010).  That is what the Board did here.

The Board erred in unreasonably expanding the interpretation of the term "material handling vehicle" beyond the meaning from the intrinsic evidence in Acme's Patent to include the table with rollers in Bourgoin.  A reasonable interpretation of the term "material handling vehicle" is specifically stated in the Acme Patent specification: "[t]he term material handling vehicle is meant to broadly include <u>transportation</u> <u>vehicles</u>".  (A36, col. 2:38-39).  The Acme specification further states that such "transportation vehicles" include "a fork lift <u>truck</u>, a flatbed <u>truck</u>, or a pallet <u>truck</u>".  (A36, col. 2:40-41).  A person having ordinary skill in the art would understand the meaning of "truck" in the context of "transportation vehicles" and would not understand this to include tables with rollers.  The Board erred by disregarding Acme's own stated meaning of the term "material handling vehicle" and violated the principles in *In re Suitco Surface* when it gave the Acme Patent claims a legally *incorrect* meaning, finding they include a table with rollers.

## II.    The Bourgoin Reference Does Not "Anticipate" the Acme Claims Under 35 U.S.C. §102(b).

<u>Standard of review</u>:  The application of the Court's *de novo* claim construction determination is used to review questions of fact under 35 U.S.C. §102(b) for substantial evidence.  Anticipation under 35 U.S.C. §102(b) is a

13

question of fact, reviewed for substantial evidence. *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013).

Under 35 U.S.C. §102(b)[3] a reference anticipates a claimed invention if:

the <u>invention</u> was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States.

(35 U.S.C. §102(b), emphasis added).  It is well settled that anticipation requires the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim. *Synqor, Inc. v. Artesyn Technologies, Inc.*, 709 F.3d 1365, 1375 (Fed. Cir. 2013).  Further, in a rejection under 35 U.S.C. §102 (b) there must be no difference between what is claimed and what is disclosed in the applied reference.  *Scripps v. Genentech Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991).

As required under 35 U.S.C. §102(b) for a reference to anticipate a claimed invention the reference must show "the presence in a single prior art disclosure of all elements of a claimed invention arranged as in the claim."  Independent claims 9 and 20[4] of the Acme Patent provide:

---

[3]    The *inter partes* reexamination at issue was filed prior to the Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) ("AIA") and thus the pre-AIA rules applied to this reexamination and to this appeal.

[4]    Dependent claims 10 and 22 depend from independent claim 9 and dependent claim 21 depends from independent claim 20.  These dependent claims are allowable as depending from allowable independent claims in view of the Board's legally incorrect application of Bourgoin below.

<u>Claim 9</u>
A system for actively dimensioning an article, the system comprising:
 a material handling vehicle,
 at least one active linear dimension detection device attached to a portion of the material handling vehicle, the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle; and
 a computer system in communication with the at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article.

(A38, col. 6:25-37).

<u>Claim 20</u>
A method of actively dimensioning an article, the method comprising the steps of:
 providing a material handling vehicle;
 positioning at least one active linear dimension detection device on a portion of the material handling vehicle and retaining the device thereon to move with the vehicle;
 positioning at least one article on the material handling vehicle; and
 actively detecting at least one linear dimension of the article while positioned on the vehicle using the at least one linear dimension detection device.

(A39, col. 8:6-16).

Claim 9, an apparatus claim, specifically claims a "material handling vehicle" as well as an "active linear dimension detection device attached" to the vehicle "to move with the vehicle". (A38, col. 6:27-31).  At least one linear dimension of the article is actively detected when the article is loaded onto the *material handling vehicle*. (A38, col. 6:31-33).

15

Claim 20, a method claim, specifically claims method steps for "actively dimensioning an article" including  a "material handling vehicle" as well as an "active linear dimension detection device" retained on the vehicle "to move with the vehicle. (A39, col. 8:8-11).  The "article" is positioned or loaded onto the *material handling vehicle* and the active dimension detection device is used while it is moved with the vehicle.   (A39, col. 8:12-16).

Claims 9 and 20 were amended during the prosecution of the Acme Patent to distinguish the use of the dimensioning device traveling with the vehicle as the vehicle is used to transport articles in an active, not passive, environment.  During the prosecution the Examiner cited *United States Patent No. 6,137,577* to Woodworth ("Woodworth") (A500-A525) to reject the claims.  Woodworth discloses a dimensioning device with a stationary system.  In response to this rejection Applicant amended claims 9 and 20 to limit the type and use of the "dimension detection device" in the claims by adding "to move with the vehicle" (A531).  Acme argued in the Response that "Woodworth does not have a linear dimension detecting device attached to and movable with the material handling vehicle as recited in applicant's claim 9." (A531).  Applicant amended claim 20 with the same limitation.

 Bourgoin does not include each and every element of independent claims 9 and 20.  Bourgoin fails to include at least the "material handling vehicle" of

independent claims 9 and 20 (and therefore of dependent claims 10, 21, and 22). The table with rollers in Bourgoin is not a material handling vehicle. The anticipation rejection based on Bourgoin must fail.

While materials can be positioned on the Bourgoin table 21 there is no facility for the table to be a "material handling vehicle". No article can be accurately dimensioned on the Bourgoin table while the table is moving since Bourgoin system is "severely constrained" by and needs to be protected "against excessive vibrations during transport" (A486, col. 2:7).

The Board's interpretation that the Bourgoin table is a "material handling vehicle" is not a <u>reasonable</u> interpretation. There is no evidence to support that conclusion, much less any substantial evidence. Bourgoin specifically identifies problems associated with and the need to protect against "excessive vibrations" (A496, col. 2:7). Moreover, one of the specifically stated "advantages" of the Bourgoin system is that "it is a passive system undisturbed by the surrounding industrial environment" (A496, col. 2:57-58) and therefore it is a "passive" dimensioning system as opposed to an "active" dimensioning system.

While the Bourgoin table is fitted with rollers, the purpose of the "rollers" is "so that it can be displaced to suit the user's needs" (A497, col. 3:42-43) or "the machine may be moved in workshops or other sites," (A496, col. 2:6). However, Bourgoin also teaches that one of its "severe constraints" is that it must be

17

protected "against excessive vibration during transport in alleys or between different sites." (A496, col. 2:6). As such, Bourgoin does not anticipate being used as a "material handling vehicle" but is a table which can be moved to "suit the user's needs" (A497, col. 3:42-43). Suiting a user's needs as to placement is vastly different from being intentionally designed to solve a specific problem such as that outlined in the Background and Summary of the Acme Patent.

The Board's interpretation of the Bourgoin table with rollers as a "material handling vehicle" is unreasonable and is not supported by any evidence of law that a person of ordinary skill in the art would understand Bourgoin. The Bourgoin reference does not teach each element of the claimed invention and fails to support a rejection under 35 U.S.C. §102.

## III. The Bourgoin Reference Does Not Support a Rejection Under 35 U.S.C. §103(a) Because the Use of the "Table" in Bourgoin "Teaches Away From" the Claimed Invention.

Standard of review: The application of the Court's *de novo* claim construction determination is used to review the question of law under 35 U.S.C. §103(a). This determination is also reviewed *de novo* for legal error because obviousness under 35 U.S.C. §103 is a question of law based on underlying findings of facts *Flo Healthcare Solutions, LLC v. Kappos, and Rioux Vision, Inc.*, 697 F.3d 1367, 1377 (Fed. Cir. 2012).

The Board's obviousness determination is not legally supported and is not supported by any substantial evidence. Rather, the Board erred in finding the table with rollers in Bourgoin to be a material handling vehicle.

Under 35 U.S.C. §103(a) a reference supports an obvious rejection of a claimed invention if:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

(35 U.S.C. §103(a)).

To establish a *prima facie* case of obviousness, the following requirements must be met: (1) there must be some suggestion or motivation, within the reference itself or in the knowledge generally available to one of ordinary skill in the art, to modify the reference teachings, (2) there must be a reasonable expectation of success, and (3) the prior art reference must teach or suggest all the claim limitations. The teaching or suggestion and the reasonable expectation of success must both be found in the prior art and not based on applicant's disclosure. *In re Vaeck*, 947 F.2d 488 (Fed. Cir. 1991). A *prima facie* case of obviousness was not established here because Bourgoin does not teach or suggest all the claim limitations.

Furthermore, the analysis of obviousness must consider the prior art "in its entirety, *i.e., as a whole*, including portions that would lead away from the claimed invention." *W.L. Gore & Assoc. v. Garlock*, 721 F. 2d 1540, 1550-51 (Fed. Cir. 1983) (emphasis added). The Federal Circuit has said that "[a] reference may be

said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or *would be led in a direction divergent from the path that was taken by the applicant*." *In re Gurley*, 27 F.3d 551, 553 (Fed. Cir. 1994) (emphasis added).

The Bourgoin reference is replete with examples of why the table cannot be used as a material handling vehicle. As discussed at pages 6, 9, and 17 above, Bourgoin does not suggest any "active dimensioning". To the contrary, the Bourgoin is "a passive system" which according to Bourgoin should be "undisturbed by the surrounding industrial environment". (A496, col. 2:57-58).

A reasonable interpretation of the term "material handling vehicle" in the Acme Patent, based on the entire Acme specification and distinct from prior art, shows that it is used to move the articles and actively dimension them while moving. Such an active system is not "passive". The "passive system" in Bourgoin is a table. While the table may include rollers, the rollers are only mentioned for movement "in workshops or to other sites" (A496, col. 2:6-7) not to move products or articles and to not actively dimension the articles while transporting the articles.

There is no motivation to modify Bourgoin to achieve the claimed invention in Acme because the specific language of Bourgoin "teaches away from" the use of the table as a material handling vehicle. While materials such as product or articles

may *rest* on the table or be *processed through* the "passive system," the products are not moved along <u>with</u> or transported by the table, much less dimensioned while moving.  To move the products along with the table would be contrary to the table's "severe constraints" and would introduce what Bourgoin says should not be introduced, "excessive vibrations".  (A496, col. 2:7).  For this reason alone, there is no reasonable expectation of success that Bourgoin could be used to achieve the claimed invention.  Also, the reasons already discussed at pages 7-10, 16, 17, and 20 above show Bourgoin teaches away from applying it in the manner of the claims of the Acme Patent.

The Board relied on an overly broad interpretation of the term "material handling vehicle", without taking into consideration the purpose of that material handling vehicle.  Considering Bourgoin in its entirety, including portions that would lead away from the claimed invention, confirms that Bourgoin does not teach a "material handling vehicle" because a person of ordinary skill in the art reading Bourgoin *would be led in a direction divergent from the invention in Acme.*

The "material handling vehicle" of the Acme Patent as set forth in the Background and Summary, eliminates systems like those in Bourgoin that are "stationary or static dimensioning" systems. (A36, col. 1:31).  The Board unreasonably broadened the scope of the term "material handling vehicle", creating an erroneous legal conclusion of its meaning.  There is substantial description in

the Acme Patent that "material handling vehicle" is meant to include "transportation vehicles such as, for example, but not limited to, a forklift truck, a flatbed truck, or a pallet truck." (A36, col. 2:39-41). The Board erred, as a matter of law, in concluding that a "transportation vehicle" is the same as "table 21" of Bourgoin that happens to include rollers.

The Board attempts to read in additional terminology to "broaden" the meaning of "material handling vehicle". The Board's unsupported and overly broad interpretation does not take into account the entire Bourgoin specification that teaches away from using the table with rollers as a material handling vehicle. Bourgoin states that "the system according to the invention has the advantage that it is a passive system undisturbed by the surrounding industrial environment". It would be unreasonable and unsupported to apply a reference that teaches away from the claimed invention to support a rejection of the Acme Patent claims.

The Board's interpretation of the term "material handling vehicle" to include the table with rollers of Bourgoin is not supported by the Bourgoin specification or how one of ordinary skill in the art would reasonably interpret Bourgoin's teachings. Bourgoin does not establish a *prima facie* case of obviousness because it does not (1) provide any suggestion or motivation to modify it, (2) there is no reasonable expectation of success in using Bourgoin to achieve the claimed invention, and (3) Bourgoin does not teach or suggest all the claim limitations as

noted above with regard to anticipation.  To the contrary, Bourgoin provides

abundant references to indicate that is leads away from the claimed invention

because a person of ordinary skill, upon reading Bourgoin would be discouraged

from following the path set out in and would be *led in a direction away from the*

*invention claimed in Acme*.  The Board erred, as a matter of law, in concluding that

the Acme Patent claims was rendered obvious by Bourgoin.

## IV. Even Assuming *Arguendo* That the Board Properly Construed "Material Handling Vehicle" as to the Bourgoin Reference the Board Erred in Concluding that Claim 22 was Not Patentable and Should Remand to Allow Amendment of Claim 22 to Place it in Independent Form for Allowance.

The Board erred in rejecting claim 22 because it is allowable even over the

rejections relating to claims 9 and 20.  Throughout the Board's decision there is no

support to render claim 22 invalid or unpatentable based on Bourgoin.

Claim 22 depends from claim 9 and includes all of the limitations of claim 9.

Claim 22 adds further limitations by specifying "The system of claim 9, further

comprising the material handling vehicle being one of a fork lift, a lift truck, a flat

bed, and a pallet truck." (A39, col. 8:22-24).  The table with rollers shown and

described in Bourgoin is not any of the additional limitations set forth in claim 22.

Bourgoin does not disclose, teach or show each one of these elements.  Further, it

would not be obvious to one of ordinary skill in the art to modify the table with

rollers in Bourgoin to achieve any of the additional limitations set forth in claim 22.

For the forgoing reasons, claim 22 is not anticipated by nor rendered obvious by the Bourgoin reference.  The Court's *de novo* review of the interpretation of the claims allow the Court to apply a proper interpretation of the term "material handling vehicle" to allow claim 22 over Bourgoin.

Even if the Court upheld the Board's Decision and the Rehearing Decision, claim 22 should be remanded to the USPTO for further action.  Claim 22 should be remanded to the USPTO to allow amendment of claim 22 in independent form for allowance.

## CONCLUSION AND STATEMENT OF RELIEF SOUGHT

The Board committed reversible error.  The Board's erroneous interpretation of the "material handling vehicle" in claims 9, 10, and 20-22 of the Acme Patent as being taught by the table with the rollers of Bourgoin is legally incorrect, is unreasonable and not supported by any substantial evidence.  To the contrary, there is substantial legal basis to show the Board erred in finding the table with rollers in Bourgoin to be a material handling vehicle.  A person of ordinary skill in the art would not consider a table with roller to be a "material handling vehicle"; four Examiners did not.

The Court should reverse the Rehearing Decision of the Board, confirm the allowance of claims 9, 10, and 20-22 as previously allowed by the USPTO Examiner, and instruct the USPTO to issue the Reexamination Certificate for the Acme Patent. Even were the Court to affirm the Board's prior Decisions, the Court should remand the reexamination to the USPTO to allow amendment of claim 22 to place it independent form for allowance.

Respectfully submitted,

Attorneys for Patent Owner/ Appellant
ACME SCALE COMPANY, INC.

/s/ Grant H. Peters
Grant H. Peters
Daniel P. Albers
Barnes & Thornburg LLP
1 N. Wacker Drive, Suite 4400
Chicago, IL 60606
Telephone: 312-357-1313
Facsimile: 312-759-5646                    October 14, 2014

# ADDENDUM

# ADDENDUM
# TABLE OF CONTENTS

*PAGE*

Decision, Right of Appeal Notice, United States Patent and
Trademark Office, Reexamination Confirmation August 15, 2011 ........... A326-338

Decision, United States Patent and Trademark Office,
Before the Patent Trial and Appeal Board, May 18, 2013 ............................... A1-16

Decision on Rehearing, United States Patent and Trademark Office,
Before the Patent Trial and Appeal Board, April 29, 2014 ............................ A17-27

Acme Patent United States Patent No. 7,757,946.......................................... A30-39

I



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,401 | 07/20/2010 | 7,757,946 | 297341-00022 | 8810 |

23644        7590        08/15/2011

BARNES & THORNBURG LLP
P.O. Box 2786
CHICAGO, IL 60690-2786

| EXAMINER |
|---|
| BROWNE, LYNNE HAMBLETON |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 08/15/2011 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)

A326

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patents and Trademark Office
P.O.Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS         Date: 8-15-11
ECKERT SEAMANS CHERIN & MELLOTT
600 GRANT STREET
44TH FLOOR
PITTSBURGH, PA 15219

**Transmittal of Communication to Third Party Requester**
**Inter Partes Reexamination**

REEXAMINATION CONTROL NO. : 95001401
PATENT NO. : 7757946
TECHNOLOGY CENTER : 3999
ART UNIT : 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified Reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the inter partes reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it cannot be extended. See also 37 CFR 1.947.

If an ex parte reexamination has been merged with the inter partes reexamination, no responsive submission by any ex parte third party requester is permitted.

All correspondence relating to this inter partes reexamination proceeding should be directed to the Central Reexamination Unit at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

PTOL-2070(Rev.07-04)

A327

| Transmittal of Communication to Third Party Requester Inter Partes Reexamination | Control No. | Patent Under Reexamination |
|---|---|---|
| | 95/001,401 | 7,757,946 |
| | Examiner | Art Unit | |
| | LYNNE H. BROWNE | 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above-identified reexamination proceeding. 37 CFR 1.903.

Prior to the filing of a Notice of Appeal, each time the patent owner responds to this communication, the third party requester of the *inter partes* reexamination may once file written comments within a period of 30 days from the date of service of the patent owner's response. This 30-day time period is statutory (35 U.S.C. 314(b)(2)), and, as such, it <u>cannot</u> be extended. See also 37 CFR 1.947.

If an *ex parte* reexamination has been merged with the *inter partes* reexamination, no responsive submission by any *ex parte* third party requester is permitted.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of the communication enclosed with this transmittal.

A328

| **Right of Appeal Notice** (37 CFR 1.953) | Control No. 95/001,401 | Patent Under Reexamination 7,757,946 |
|---|---|---|
| | Examiner LYNNE H. BROWNE | Art Unit 3992 | |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address. --*

Responsive to the communication(s) filed by:
Patent Owner on 29 April 2011
Third Party(ies) on 26 May 2011

Patent owner and/or third party requester(s) may file a notice of appeal with respect to any adverse decision with payment of the fee set forth in 37 CFR 41.20(b)(1) within **one-month or thirty-days (whichever is longer)**. See MPEP 2671. In addition, a party may file a notice of **cross** appeal and pay the 37 CFR 41.20(b)(1) fee **within fourteen days of service** of an opposing party's timely filed notice of appeal. See MPEP 2672.

**All correspondence** relating to this inter partes reexamination proceeding should be directed to the **Central Reexamination Unit** at the mail, FAX, or hand-carry addresses given at the end of this Office action.

If no party timely files a notice of appeal, prosecution on the merits of this reexamination proceeding will be concluded, and the Director of the USPTO will proceed to issue and publish a certificate under 37 CFR 1.997 in accordance with this Office action.

The proposed amendment filed 26 May 2011        ☒ will be entered        ☐ will not be entered*

*Reasons for non-entry are given in the body of this notice.

1a. ☒ Claims 1-23 are subject to reexamination.
1b. ☐ Claims _____ are not subject to reexamination.
2. ☒ Claims 1,11,12,16 and 23 have been cancelled.
3. ☒ Claims 9,10 and 20-22 are confirmed. [Unamended patent claims].
4. ☒ Claims 2-8,13-15 and 17-19 are patentable. [Amended or new claims].
5. ☐ Claims _____ are rejected.
6. ☐ Claims _____ are objected to.
7. ☐ The drawings filed on _____   ☐ are acceptable.   ☐ are not acceptable.
8. ☐ The drawing correction request filed on _____ is ☐ approved.   ☐ disapproved.
9. ☐ Acknowledgment is made of the claim for priority under 35 U.S.C. 119 (a)-(d) or (f). The certified copy has:
        ☐ been received.   ☐ not been received.   ☐ been filed in Application/Control No. _____.
10. ☐ Other _____

**Attachments**
1. ☐ Notice of References Cited by Examiner, PTO-892
2. ☐ Information Disclosure Citation, PTO/SB/08
3. ☐ _____

A329

## DETAILED ACTION

**This is a RIGHT OF APPEAL NOTICE (RAN)**; see MPEP § 2673.02 and §

2674. The decision in this Office action as to the patentability or unpatentability of any

original patent claim, any proposed amended claim and any new claim in this

proceeding is a FINAL DECISION.

No amendment can be made in response to the Right of Appeal Notice in an

*inter partes* reexamination. 37 CFR 1.953(c). Further, no affidavit or other evidence can

be submitted in an *inter partes* reexamination proceeding after the right of appeal

notice, except as provided in  37 CFR 1.981 or as permitted by 37 CFR 41.77(b)(1). 37

CFR 1.116(f).

Each party has a **thirty-day or one-month time period, whichever is longer,**

to file a notice of appeal. The patent owner may appeal to the Board of Patent Appeals

and Interferences with respect to any decision adverse to the patentability of any

original or proposed amended or new claim of the patent by filing a notice of appeal and

paying the fee set forth in 37 CFR 41.20(b)(1).  The third party requester may appeal to

the Board of Patent Appeals and Interferences with respect to any decision favorable to

the patentability of any original or proposed amended or new claim of the patent by filing

a notice of appeal and paying the fee set forth in 37 CFR 41.20(b)(1).

In addition, a patent owner who has not filed a notice of appeal may file a notice

of cross appeal within **fourteen days of service** of a third party requester's timely filed

notice of appeal and pay the fee set forth in 37 CFR 41.20(b)(1).  A third party requester

who has not filed a notice of appeal may file **a notice of cross appeal within fourteen**

Application/Control Number: 95/001,401                                        Page 3
Art Unit: 3992

**days of service** of a patent owner's timely filed notice of appeal and pay the fee set

forth in 37 CFR 41.20(b)(1).

Any appeal in this proceeding must identify the claim(s) appealed, and must be

signed by the patent owner (for a patent owner appeal) or the third party requester (for a

third party requester appeal), or their duly authorized attorney or agent.

Any party that does not file a timely notice of appeal or a timely notice of cross

appeal will lose the right to appeal from any decision adverse to that party, but will not

lose the right to file a respondent brief and fee where it is appropriate for that party to do

so. If no party files a timely appeal, the reexamination prosecution will be terminated,

and the Director will proceed to issue and publish a certificate under 37 CFR 1.997 in

accordance with this Office action.

### Summary of the Proceeding to Date

- A request for *inter partes* reexamination of claims 1-23 of U.S. Patent No.
  7,757,946 (hereinafter "the '946 patent") was filed on July 20, 2010.

- A determination ordering reexamination of claims 1-23 of the '946 patent was
  mailed on September 20, 2010.

- A non-final office action was mailed on September 20, 2010.

- Patent owner's response to the non-final office action was filed on November 22,
  2010.

- Third party's response to the non-final office action was filed on December 22,
  2010.

- An action closing prosecution was mailed April 1, 2011.

Application/Control Number: 95/001,401                                          Page 4
Art Unit: 3992

- Patent owner's response to the action closing prosecution was filed on April 28, 2011.

- Third party's comments regarding the patent owner's response to the action closing prosecution and the action closing prosecution was filed on May 26, 2011.

### *Status of Claims*

Claims 1, 11, 12, 16 and 23 have been cancelled.  Claims 2-10, 13-15 and 17-22 are pending.

### *Allowable Subject Matter*

Claims 9, 10 and 20-22 are confirmed.

Claims 2-8, 13-15 and 17-19 are allowed.

Claims 9, 10 and 20-22 have been confirmed throughout prosecution of the *inter partes* reexamination proceeding.  Third party's proposed rejections of these claims are all based on U.S. Patent No. 5,854,679 to Bourgoin et al. ("Bourgoin").  The examiner did not adopt these rejections because Bourgoin fails to disclose a material handling vehicle within the meaning of that terminology as used in the '946 patent.  For further discussion why the examiner found that Bourgoin fails to disclose a material handling vehicle as claimed, the parties' attention is directed to the non-final Office action mailed September 20, 2010.

Claims 4, 5, 13-15 and 18-22 were also confirmed in the non-final Office action mailed September 20, 2010 for the same reasons.

Patent owner has rewritten claims 4, 13 and 18 in independent form including all of the limitations of the base claim and any intervening claims, thus placing them and their dependent claims in condition for allowance. Patent owner has further amended claims 2, 3, 6, 8 and 17 to depend from either claim 4 or claim 18, thus placing these claims in condition for allowance.

### *Response to Third Party's Comments*

The only remaining issue in this proceeding is whether or not the claim terminology "material handling vehicle" has been properly construed by the examiner. As all of the arguments raised by third party hinge on this question, the examiner will limited her response to rebutting this argument.

Third party contends that the examiner has not used the broadest reasonable interpretation in interpreting the claim language "material handling vehicle". The examiner respectfully disagrees. As discussed at length in the prior Office actions the examiner maintains that the wheeled inspection table of the conveyor system disclosed by Bourgoin is not a "material handling vehicle" as set forth in the allowed claims when read in light of the specification of the '946 patent.

Third party is reminded that during reexamination claim terminology is given the broadest reasonable interpretation in light of the specification. Third party is further reminded that patent owner may be his own lexicographer and where an explicit definition is provided by the patent owner for a term, that definition will control interpretation of the term as it is used in the claim. Toro Co. v. White Consolidated Industries Inc., 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir. 1999) (meaning

of words used in a claim is not construed in a "lexicographic vacuum, but in the context

of the specification and drawings").

In the '946 patent, patent owner has set forth an explicit definition of the claim

terminology "material handling vehicle" stating:

> The term material handling vehicle is meant to broadly include
> transportation vehicles such as, for example, but not limited to a fork lift
> truck, a flatbed truck, or a pallet truck (column 2, lines 39-41).

The '946 patent further indicates the other types of transportation vehicles

included in this definition throughout the specification stating, for example: "Briefly, and

in accordance with the foregoing, disclosed is a system and method for determining the

dimensions and weight of products on or in forklifts, pallets, or lift trucks (column 1, lines

47-49) and "Another embodiment of the present disclosure employs one or more

dimensioning devices(s) mounted at a location on a lift truck. This feature allows the lift

truck to become a mobile product dimensioning system" (column 1, lines 66 to column

2, line 2).

In addition, the '946 patent explicitly distinguishes conveyor systems, such as the

conveyor system disclosed by Bourgoin et al. from the systems and methods disclosed

therein stating:

> Conveyor systems also exist that pass objects of various dimension
> through laser curtains, or image such objects using cameras, that then
> use computers to determine dimension. In such systems, a product is
> placed on a conveyor and is conveyed through a "U" shaped tunnel that
> uses laser scamming to capture the dimension in motion. Such systems
> can be effective for small parcels that are bundled downstream of the
> conveyor. However, this process can be time consuming for applications
> that require large quantities of products, possible of varying sizes, such as
> for example, quantities that fill an entire forklift pallet or lift truck. Current
> systems present several inefficiencies in this situation related to unloading

the truck, passing the items individually through the conveyor, and reloading the truck. There is a need to scan an entire pallet or entire truck load contemporaneously, in a fast, automated process.

Thus, even if one were to completely ignore the definition of "material handling vehicle" set forth in the '946 patent, it is still apparent that the claim terminology "material handling vehicle" does not encompass a wheel table for a conveyor system of the type disclosed by Bourgoin et al.

Third party maintains that the examiner has not applied the correct standard in construing the claim language. The examiner respectfully disagrees. While third party is correct that absent an explicit definition "the words of the claim must be given their plain meaning", in the instant proceeding where an explicit definition of the claim terminology is set forth in the specification it is the definition set forth in the specification that controls. The examiner has used this definition to construe the claims and properly has determined that Bourgoin et al. does not meet the claim language "material handling vehicle".

Moreover, even if the explicit definition of "material handling vehicle" set forth in the specification is ignored, the wheeled inspection table of the conveyor system disclosed by Bourgoin et al. does not fall within the plain meaning of the claim terminology "material handling vehicle", as it is the conveyor 41 that handles the material 23, not the table 21. The table 21 merely surrounds the materials handling device (conveyor 41) and does not handle the material at all. The conveyor is not a vehicle and thus cannot meet this claim terminology. The table may in the broadest sense be construed to be a vehicle, but it does not handle the material. Thus, Bourgoin

et al. fails to meet the claim language in question even if the definition set forth in the specification of the '946 patent is ignored.

Third party makes much of the fact that the patent literature contains instances where the terminology "material handling vehicle" is used to describe devices such as wheel barrows. First, the examiner notes that it is not the exception that makes the rule. The plain meaning of the words used in a claim refers to the ordinary and customary meaning of the terminology. An unusual use of the claim terminology is not the ordinary and customary meaning of the claim terminology. As discussed in the prior Office action, the examiner was able to discover only three out of three hundred and sixty eight instances where the terminology "material handling vehicle" was used in a patent to refer to a vehicle other than a forklift, lift truck or similar vehicle. Thus, the ordinary and customary meaning of this claim terminology is "forklift, lift truck, pallet truck, flatbed truck or similar vehicle" as defined by the disclosure of the '946 patent.

Third party contends that the examiner failed to adequately explain her reasons for not adopting third party's proposed rejections. The examiner respectfully disagrees. The examiner set forth detailed explanations of why Bourgoin et al. does not meet the claim language "material handling vehicle" in both of the prior Office actions.

Accordingly, third party's arguments are not persuasive and the rejections are maintained.

## Extensions of Time

Extensions of time under 37 CFR 1.136(a) will **not** be permitted in these proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 314(c) requires

that *inter partes* reexamination proceedings "will be conducted with special dispatch"

(37 CFR 1.937).  Patent owner extensions of time in *inter partes* reexamination

proceedings are provided for in 37 CFR 1.956.  Extensions of time are not available for

third party requester comments, because a comment period of 30 days from service of

patent owner's response is set by statute.  35 USC 314(b)(3).

### Notification of Concurrent Proceedings

The patent owner is reminded of the continuing responsibility under 37 CFR 1.985 to

apprise the Office of any litigation activity, or other prior or concurrent proceeding,

involving Patent No. 7,595,764 throughout the course of this reexamination

proceeding.  The third party requester is also reminded of the ability to similarly

apprise the Office of any such activity or proceeding throughout the course of this

reexamination proceeding.  See MPEP § 2686 and 2686.04.

### *Service of Papers*

Any paper filed by either the patent owner or the third party requester *must be*

*served* on the other party in the reexamination proceeding in the manner provided by

37 CFR 1.248.  See 37 CFR 1.903 and MPEP 2666.06.

**All** correspondence relating to this *inter partes* reexamination proceeding should

be directed as follows:

By **U.S. Postal Service Mail** to:
    Mail Stop *Inter Partes* Reexam
    ATTN:  Central Reexamination Unit

Application/Control Number: 95/001,401                                              Page 10
Art Unit: 3992

       Commissioner for Patents
       P.O. Box 1450
       Alexandria, VA  22313-1450

By FAX to:   (571) 273-9900
            Central Reexamination Unit

By hand to:  Customer Service Window
            Randolph Building
            401 Dulany St.
            Alexandria, VA  22314

Any inquiry concerning this communication or earlier communications from the

Reexamination Legal Advisor or Examiner, or as to the status of this proceeding, should

be directed to the Central Reexamination Unit at telephone number (571) 272-7705.

/Lynne H Browne/                Conferee: _____
Lynne H. Browne
Art Unit 3992                   Conferee: _____
Central Reexamination Unit
(571) 272-3670

A338



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 95/001,401 | 07/20/2010 | 7,757,946 | 297341-00022 | 8810 |

23644        7590        05/18/2013
Barnes & Thornburg LLP (CH)
P.O. Box 2786
Chicago, IL 60690-2786

| EXAMINER |
|---|
| TON, MY TRANG |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 05/18/2013 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A  (Rev. 04/07)

A1

UNITED STATES PATENT AND TRADEMARK OFFICE

———————————

BEFORE THE PATENT TRIAL AND APPEAL BOARD

———————————

LTS SCALE COMPANY, LLC
Requester and Appellant

v.

ACME SCALE COMPANY INC.
Patent Owner

———————————

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2[1]
Technology Center 3900

———————————

Before HOWARD B. BLANKENSHIP, KARL D. EASTHOM, and
STANLEY M. WEINBERG, *Administrative Patent Judges.*

WEINBERG, *Administrative Patent Judge.*

DECISION ON APPEAL

———————————

[1] The patent involved in this reexamination appeal proceeding (the "'946 Patent") issued to Kienzle-Lietl on July 20, 2010.

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

## A.     STATEMENT OF THE CASE

### Introduction

On July 20, 2010, LTS Scale Company, LLC (Appellant) filed a Request for *Inter Partes* Reexamination of the '946 Patent (Request).

Claims 1, 11, 12, 16, and 23 have been canceled.  Unamended claims 9, 10, and 20-22 have been confirmed.  Amended claims 2-8, 13-15, and 17-19 have been allowed.  Right of Appeal Notice (RAN) 4.  Appeal Brief (App. Br.) 2.

Appellant appeals under 35 U.S.C. §§ 134(c) and 315 from the Examiner's refusal to adopt Requester's proposed rejections of claims 9, 10, and 20-22.  App. Br. 2; RAN 4 incorporating the non-final office Action mailed September 20, 2010 ("9/20/2010 OA").

Appellant relies on its Appeal Brief and a Rebuttal Brief (Reb. Br.) in support of its positions.  The Patent Owner relies on a Respondent Brief (Resp. Br.) in support of the Examiner's position.

We have jurisdiction under 35 U.S.C. §§ 134 and 315.

We reverse and designate new grounds of rejection as permitted by 37 C.F.R. § 41.77(b).

### Related Proceeding

Appellant informs us that there are no prior or pending appeals, interferences, or judicial proceedings known to Appellant or its representative which may be related to, directly affect, be directly affected by, or have a bearing on the Board's decision in this appeal.  App. Br. 1.

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

The Invention

This invention relates to methods, systems, and devices to obtain dimensions of an article or product in association with material handling devices. One or more dimension detecting devices may be positioned on a mast or other portion of a material handling vehicle allowing the material handling vehicle to act as a mobile product dimensioning system. A dimension is a calculation of length, width, and height of an object, and for purposes of this invention, a weight can also be included. Abstract; col. 1, ll. 16-18. The appealed claims are directed to the embodiment shown in Fig. 4. App. Br. 2-3.

Claim 9 is representative of the appealed subject matter and is reproduced below with disputed limitations emphasized (App. Br. 23-24, Claims App'x):

> 9.    A system for actively dimensioning an article, the system comprising:
> *a material handling vehicle*,
> at least one active linear dimension detection device attached to a portion of the material handling vehicle, the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle; and
> a computer system in communication with the at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article.

The Prior Art

| | | |
|---|---|---|
| Bourgoin et al. | 5,854,679 | Dec. 29, 1998 |
| Berg et al. | 6,115,114 | Sept. 5, 2000 |
| Ridling | 6,983,883 B2 | Jan. 10, 2006 |
| Andersen et al. | 2004/0102870 A1 | May 27, 2004 |

3

A4

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

Proposed Rejections Not Adopted

The appealed proposed rejections not adopted are:

1.    Claims 9 and 20-22 under 35 U.S.C. § 102(b) as anticipated by Bourgoin.  App. Br. 3, 12-14; 9/20/2010 OA 2-3.

2.    Claims 9 and 20-22 under 35 U.S.C. § 103(a) as obvious over Bourgoin.  App. Br. 3, 14-16; 9/20/2010 OA 6.

3.    Claims 9 and 20-22 under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Berg.  App. Br. 3, 17-19; 9/20/2010 OA 6-7.

4.    Claims 9 and 20 under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Ridling.  App. Br. 3, 19-20; 9/20/2010 OA 8-9.

5.    Claim 10 under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Berg and Andersen.  App. Br. 3, 20; 9/20/2010 OA 7.

The RAN provides a summary of the reasons why certain rejections were not adopted (RAN 4); and refers to the September 20, 2010 non-final Office Action "[f]or further discussion why the examiner found that Bourgoin fails to disclose a material handling vehicle as claimed."  RAN 4.

The Contentions

The Examiner concludes that "Bourgoin fails to disclose a material handling vehicle within the meaning of that terminology as used in the '946 patent."  RAN 4.  The Examiner also concludes that "the wheeled inspection table of the conveyor system disclosed by Bourgoin is not a 'material handling vehicle' as set forth in the allowed claims when read in light of the specification of the '946 patent."  RAN 5.

4

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

Patent Owner agrees, contending that "the table identified in Bourgoin cannot be considered to be the equivalent of a 'vehicle' such as a 'transportation vehicle' or 'truck.'" Resp. Br. 5.

Appellant contends that the Examiner has formulated and inappropriately relied upon an erroneous definition of the recited term "material handling vehicle." App. Br. 3. Instead, Appellant contends, the plain meaning of "material handling vehicle" encompasses a wheeled table such as is disclosed in Bourgoin. App. Br. 13.

B.    ISSUE

Under § 102, does Bourgoin disclose a material handling vehicle?

C.    ANALYSIS

*Whether "Material Handling Vehicle" is a Well Known Term of Art*

The Examiner finds that

> [t]he terminology "material handling vehicle" is a well known term of art in the material handling art. It refers to [a] variety of well known vehicles: fork lifts, pallet lifts, order pickers, lift trucks, etc. This terminology is not used to refer to wheeled tables designed for use with conveyors such as the device disclosed by Bourgoin. One of ordinary skill in the art at the time of the invention would not have considered the wheeled table disclosed by Bourgoin to meet the claim limitations requiring a material handling vehicle.

9/20/2010 OA 3.

In the April 1, 2011 Action Closing Prosecution (ACP), the Examiner states that "the [E]xaminer has personal knowledge of the use of the terminology 'materials handling vehicle' as a term of art" and states the basis for the personal knowledge is knowledge the Examiner purportedly

5

A6

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

learned in the Examiner's previous employment from January 1988 to April 1990. During the Examiner's previous employment, the term "material handling vehicle" was purportedly used "to refer to vehicles such as fork lifts, pallet lifts, and lift trucks, just as it was used in the specification of the '946 patent." ACP 8-9. Also according to the Examiner's personal knowledge, "[a]t no time [during the Examiner's previous employment] was this terminology ever used to refer to a wheel barrow or a wheeled table of the type described in Bourgoin." ACP 9.

The Examiner also finds that "[o]f the 368 patents which use the terminology 'material handling vehicle' there are three patents directed to non-motorized vehicles (wheel barrows)" and accordingly concludes that "that doesn't make wheel barrows 'material handling vehicles' in the context of the '946 patent either." ACP 9. Similarly, in the RAN, the Examiner further states that "the examiner was able to discover only three out of three hundred and sixty eight instances where the terminology 'material handling vehicle' was used in a patent to refer to a vehicle other than a forklift, lift truck or similar vehicle." RAN 8. "Thus," the Examiner concludes, "the ordinary and customary meaning of this claim terminology is 'forklift, lift truck, pallet truck, flatbed truck or similar vehicle' as defined by the disclosure of the '946 patent." *Id.*

Appellant notes that the Examiner has not made the 368 instances of record, or identified the time frame of the Examiner's search, or identified how the search was conducted. App. Br. 10 n. 9. Appellant also contends that the Examiner's identification of three persons of ordinary skill in the art who refer to wheelbarrows and hand trucks as material handling vehicles

6

A7

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

shows that "the Examiner's narrow formulation of the term "material handling vehicle . . . is erroneous." App. Br. 10. That is, Appellant contends, because at least some persons of ordinary skill in the art refer to more devices than forklifts, lift trucks, pallet trucks, and flatbed trucks in the context of a material handling vehicle, the plain meaning of material handling vehicle encompasses more than the Examiner's proffered definition. *Id.*

In a reexamination proceeding, "a preponderance of the evidence must show nonpatentability before the PTO may reject the claims of a patent application." *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1427 (Fed. Cir. 1988). "If the examiner is relying on personal knowledge to support the finding of what is known in the art, the examiner must provide an affidavit or declaration setting forth specific factual statements and explanation to support the finding." MPEP § 2144.03 C. Here, the Examiner has not provided an affidavit or declaration in support of the ACP's statement of personal knowledge[2] nor provided the evidence regarding the 368 patents purportedly supporting the Examiner's findings in the 10/20/2010 Office Action and the RAN regarding the meaning of material handling vehicle.

We therefore conclude that the Examiner has not proved by a preponderance of the evidence (1) that "material handling device" is a well known term of art in the material handling art meaning fork lifts, pallet lifts,

---

[2] Even if we assume the Examiner's findings based upon the Examiner's personal knowledge from January 1988 to April 1990 are sufficiently supported, the Examiner has not found that the same interpretation applies to April 2004, the date that Patent Owner filed its related Provisional application.

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

order pickers, and lift trucks; (2) that the term is not used to refer to wheeled tables; (3) that the ordinary and customary meaning of "material handling vehicle" is forklift, lift truck, pallet truck, flatbed truck, or similar vehicle; or (4) that one skilled in the art would not have considered Bourgoin's wheeled table to be a material handling vehicle.

*Whether Bourgoin Discloses a Material Handling Vehicle*
*Within the Meaning of That Terminology in the '946 Patent*

Claims are to be given their broadest reasonable interpretation consistent with the specification, reading the claim language in light of the specification as it would be interpreted by one of ordinary skill in the art. *In re Am. Acad. Of Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004). This is the standard for claim construction in both original examination and reexamination. *See In re Yamamoto*, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

The Examiner finds that Bourgoin fails to disclose a material handling vehicle within the meaning of that terminology as used in the '946 Patent. RAN 4-5. The Examiner finds that the '946 Patent "set[s] forth an explicit definition of the claim terminology 'material handling vehicle.'" According to the Examiner, the '946 contains the following statements, which comprise the requisite definition:

> Briefly, and in accordance with the foregoing, disclosed is a system and method for determining the dimension and weight of products on or in forklifts, pallets, or lift trucks. Col. 1, ll. 47-49.

> Another embodiment of the present disclosure employs one or more dimensioning device(s) mounted at a location on a lift truck. This feature allows the lift truck to become a mobile product dimensioning system. Col. 1, l. 66-col. 2, l. 2.

8

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

> The term material handling vehicle is meant to broadly include transportation vehicles such as, for example, but not limited to, a fork lift truck, a flatbed truck, or a pallet truck. Col. 2, ll. 38-42.

RAN 6.

Patent Owner contends that Bourgoin's table 21

> is simply a table which can be displaced for the convenience of the user and is <u>not</u> *intended* to be a material handling <u>vehicle</u>. There are any number of large pieces of furniture which are fitted with wheels for convenience in positioning and locating (a couch, a tool chest, a television cart, etc.). None of these pieces of furniture would be considered "vehicles."

Resp. Br. 3 (emphasis in original and emphasis added).

Patent Owner also contends that

> [t]he *primary* purpose or function of a "vehicle", given its plain meaning, is move. In the present situation the vehicle moves products or articles. The *primary* purpose of a table, given its plain meaning, is to be stationary. Even when wheels are provided to allow it to be displaced, its *primary* purpose is to not move. Clearly, the table identified in Bourgoin cannot be considered to be the equivalent of a "vehicle" such as a "transportation vehicle" or "truck".

Resp. Br. 5 (emphasis added).

Appellant contends that the above-quoted phrases "to broadly include," "such as," "for example," and "but not limited to" quoted by the Examiner all demonstrate that the Patent Owner "never intended the extremely limited definition of 'material handling vehicle' urged by the Examiner." App. Br. 7. Appellant also points to the Abstract which states: "One or more dimension detection devices may also be positioned on a mast

9

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

or other portion of the material handling vehicle allowing the material handling vehicle to act as a mobile product dimensioning system." App. Br. 7 n. 5. Pointing to all of the above portions of the '946 Patent, Appellant contends that the '946 Patent "was intended to refer to *any* type of device that is 'mobile' or that provides mobility." App. Br. 7.

In response, Patent Owner contends that Appellant mischaracterizes the phrase "for example, but not limited to, a fork lift truck, a flat bed truck or a plate truck" in the '946 Patent. Resp. Br. 5. Patent Owner contends that weight must be given to the fact that "but not limited to" "is bounded by the limitations of the vehicles being 'transportation vehicles' and each of the cited examples including the term 'truck.'" Resp. Br. 5.

Patent Owner also points out that during the course of the original examination and the present reexamination, the application has been searched and examined by four different Examiners and the Bourgoin reference has been known to all of them because Patent Owner cited Bourgoin in an Information Disclosure Statement filed with the initial filing of the application that resulted in the '946 Patent. None of those Examiners, Patent Owner states, applied Bourgoin. Resp. Br. 4.

There is a heavy presumption that terms of a patent claim take on their "plain, ordinary, and accustomed meaning to one of ordinary skill in the relevant art." *Prima Tek II, L.LC. v. Polypap, S.A.R.L*, 318 F.3d 1143, 1148 (Fed. Cir. 2003). Although a patent owner may overcome that presumption by acting as its own lexicographer so as to assign a special definition to a term, that definition must be "clearly set[ ] forth" and "explicit." *Id. See also In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994) (explaining that an

10

A11

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

inventor may define specific terms used to describe an invention, but must do so "with reasonable clarity, deliberateness, and precision" and, if done, must "'set out his uncommon definition in some manner within the patent disclosure' so as to give one of ordinary skill in the art notice of the change" in meaning) (quoting *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387-88 (Fed. Cir. 1992)).

Here, we do not discern that the '946 Patent provides any clear and explicit lexicographic definition of the term "material handling vehicle." Indeed, rather than direct us to any such definition, Patent Owner is content to rely simply on descriptions of various preferred embodiments of the invention. Yet, mere drawings or descriptions of embodiments, even if preferred, do not operate to limit the meaning of a claim term. While the '946 Patent may contemplate a forklift, pallets, pallet trucks, lift trucks, and flatbed trucks, as exemplary forms of a "material handling vehicle," that is insufficient to imbue the term with a special meaning disassociated from its ordinary and customary meaning. We therefore reject Patent Owner's and Examiner's argument in that regard.

Alternatively, the Examiner finds that even if the purportedly explicit definition of material handling vehicle set forth in the '946 Patent is ignored,

> the wheeled inspection table of the conveyor system disclosed by Bourgoin et al. does not fall within the plain meaning of the claim terminology 'material handling vehicle', as it is the conveyor 41 that handles the material 23, not the table 21. The table 21 merely surrounds the materials handling device (conveyor 41) and does not handle the material at all. The conveyor is not a vehicle and thus cannot meet this claim terminology. *The table may in the broadest sense be construed to be a vehicle*, but it does not handle the material.

11

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

RAN 7 (emphasis added).

Appellant correctly points out that Bourgoin's Figure 5 is the only embodiment showing a conveyor, identified with reference number 41. App. Br. 8. *See* col. 2, ll. 39-42; col. 3, ll. 20-21; col. 7, l. 19. Appellant also correctly points out that Bourgoin's embodiment shown in Figs. 1-4 uses the wheeled table with rollers, not a conveyor, and is therefore the applicable embodiment. App. Br. 8.

We agree with Appellant. We also agree with the Examiner's finding that "[t]he table may in the broadest sense be construed to be a vehicle." Since the table may be considered to be a vehicle, and since Bourgoin's table 21 handles material 23 by providing support for material 23, we find that Bourgoin's table 21 is a material handling vehicle and Bourgoin anticipates claim 9.

We are therefore persuaded that the Examiner erred in not rejecting (1) representative claim 9 as anticipated by Bourgoin and (2) claim 20 for similar reasons.

### D.  SUMMARY/CONCLUSION

We enter and designate the following rejections as new grounds of rejection pursuant to 37 C.F.R. § 41.77(b) as set forth in the Request:

Claims 9 and 20-22 are rejected under 35 U.S.C. § 102(b) as anticipated by Bourgoin.

Claims 9 and 20-22 are rejected under 35 U.S.C. § 103(a) as obvious over Bourgoin.

Claims 9 and 20-22 are rejected under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Berg.

12

A13

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

Claims 9 and 20 are rejected under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Ridling.

Claim 10 is rejected under 35 U.S.C. § 103(a) as obvious over Bourgoin in view of Berg and Anderson.

DECISION

The Examiner's decision favorable to the patentability of claims 9, 10, and 20-22 is reversed.

This decision contains new grounds of rejection pursuant to 37 C.F.R. § 41.77(b) which provides that "[a]ny decision which includes a new ground of rejection pursuant to this paragraph shall not be considered final for judicial review." Correspondingly, no portion of the decision is final for purposes of judicial review. A requester may also request rehearing under 37 C.F.R. § 41.79, if appropriate, however, the Board may elect to defer issuing any decision on such request for rehearing until such time that a final decision on appeal has been issued by the Board.

For further guidance on new grounds of rejection, see 37 C.F.R. § 41.77(b)-(g). The decision may become final after it has returned to the Board. 37 C.F.R. § 41.77(f).

37 C.F.R. § 41.77(b) also provides that the Patent Owner, WITHIN ONE MONTH FROM THE DATE OF THE DECISION, must exercise one of the following two options with respect to the new grounds of rejection to avoid termination of the appeal as to the rejected claims:

(1) *Reopen prosecution.* The owner may file a response requesting reopening of prosecution before the examiner. Such a response must be

13

A14

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

either an amendment of the claims so rejected or new evidence relating to the claims so rejected, or both.

(2) *Request rehearing*. The owner may request that the proceeding be reheard under § 41.79 by the Board upon the same record.

Any request to reopen prosecution before the examiner under 37 C.F.R. § 41.77(b)(1) shall be limited in scope to the "claims so rejected." Accordingly, a request to reopen prosecution is limited to issues raised by the new ground(s) of rejection entered by the Board. A request to reopen prosecution that includes issues other than those raised by the new ground(s) is unlikely to be granted.

A requester may file comments in reply to a patent owner response. 37 C.F.R. § 41.77(c). Requester comments under 37 C.F.R. § 41.77(c) shall be limited in scope to the issues raised by the Board's opinion reflecting its decision to reject the claims and the patent owner's response under paragraph 37 C.F.R. § 41.77(b)(1). A newly proposed rejection is not permitted as a matter of right. A newly proposed rejection may be appropriate if it is presented to address an amendment and/or new evidence properly submitted by the patent owner, and is presented with a brief explanation as to why the newly proposed rejection is now necessary and why it could not have been presented earlier.

Compliance with the page limits pursuant to 37 C.F.R. § 1.943(b), for all patent owner responses and requester comments, is required.

The examiner, after the Board's entry of a patent owner response and requester comments, will issue a determination under 37 C.F.R. § 41.77(d) as to whether the Board's rejection is maintained or has been overcome. The

14

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

proceeding will then be returned to the Board together with any comments and reply submitted by the owner and/or requester under 37 C.F.R. § 41.77(e) for reconsideration and issuance of a new decision by the Board as provided by 37 C.F.R. § 41.77(f).

Requests for extensions of time in this proceeding are governed by 37 C.F.R. §§ 1.956 and 41.79(e).

<u>REVERSED -- 37 C.F.R. § 41.77(b)</u>

PATENT OWNER:

BARNES & THORNBURG LLP
P.O. BOX 2786
CHICAGO, IL 60690-2786

THIRD PARTY REQUESTER:

ECKERT SEAMANS CHERIN & MELLOTT
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

alw

15

A16

UNITED STATES PATENT AND TRADEMARK OFFICE

---

BEFORE THE PATENT TRIAL AND APPEAL BOARD

---

LTS SCALE COMPANY, LLC
Requester and Appellant

v.

ACME SCALE COMPANY INC.
Patent Owner

---

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2
Technology Center 3900

---

Before HOWARD B. BLANKENSHIP, KARL D. EASTHOM, and
STANLEY M. WEINBERG, *Administrative Patent Judges.*

WEINBERG, *Administrative Patent Judge.*

DECISION ON REHEARING

Patent Owner Acme Scale Company, Inc. ("Acme") requests
rehearing ("Reh. Req.") under 37 C.F.R. § 41.79 in the above-entitled *inter
partes* reexamination of US 7,757,946 ("the '946 Patent") with respect to the
conclusion of the Patent Trial and Appeal Board ("Board") that claims 9, 10,

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

and 20-22 are not patentable under 35 U.S.C. §§ 102(b) and 103(a) on various stated grounds, the concurrent decisions reversing the Examiner's conclusion that those claims are patentable and entering new grounds of rejections of those claims. The Board's conclusions were reached in a Decision on Appeal mailed on May 18, 2013 ("Decision"). Appellant and Requester LTS Scale Company ("LTS") opposes the Request for Rehearing.

The Bourgoin Reference

All of the newly entered grounds of rejection of claims 9, 10, and 20-22 are based on Bourgoin as the primary reference.

*Owner's Argument That Bourgoin Does Not Disclose
A Device That Moves With The Vehicle Is Not Persuasive*

One of Acme's contentions is that "both claims 9 and 20 . . . include terminology in which the system or method includes a 'material handling vehicle' with a device attached to the material handling vehicle 'to move with the vehicle'" Reh. Req. 3. *See also* Reh. Req. 4 ("a 'material handling vehicle' having a device to detect the dimensions of another article carried on the vehicle and move with the vehicle"); *Id.* at 7 ("Claims 9 and 20 were amended . . . to clarify that the dimension detection device . . . 'moved with the vehicle.'"). Neither claim recites that the material handling vehicle actually moves, or that the dimension detecting device actually moves, or that the dimension detection device actually moves with the material handling vehicle. Accordingly, neither claim recites a device that is attached to the material handling vehicle so that it "move[s] with the vehicle." Instead, claim 9 recites that "the dimension detection device [is] *positioned to move* with the vehicle." (emphasis added). Similarly, claim 20 recites "positioning at least one active linear dimension detection device on a

2

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

portion of the material handling vehicle and retaining the device thereon *to move* with the vehicle." (emphasis added). Therefore, this argument is not persuasive because it is not commensurate with the claim language.

*The Issue On Appeal*

Without discussing the claims in the context of either Section 102 or Section 103 and without discussing any of the secondary references, Acme's Respondent Brief broadly focused on the meaning of the claim terms "vehicle" and "material handling vehicle" solely in the context of the primary reference, Bourgoin. *See* Resp. Br. 3 ("the Examiner has properly interpreted this term [material handling vehicle] as used in the claims and as provided in the specification.") *See also* Resp. Br. 5 ("The plain meaning of the term 'material handling vehicle' is a 'vehicle.'"). Based on its contention that Bourgoin's table is "is <u>not</u> intended to be a material handling vehicle" (Resp. Br. 3), Acme further broadly contended that "the table identified in Bourgoin cannot be considered to be the equivalent of a 'vehicle' such as a 'transportation vehicle' or 'truck," again without discussing Bourgoin in the context of either Section 102 or Section 103. (Resp. Br. 5).

The Decision presented the issue for resolution in this appeal as "Under § 102, does Bourgoin disclose a material handling vehicle?" Decision 5.

In its Request for Rehearing, Acme now contends that the Board should reverse itself based upon the Board's statement of the issue as being

3

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

based solely on Section 102.[1]  For example, Acme contends that "Bourgoin does not anticipate the invention and requests withdrawal of the new grounds of rejection" (Reh. Req. 3) and "the Bourgoin reference is not an appropriate reference to support a rejection under 35 U.S.C. § 102." (Reh. Req. 4).  Acme further contends that "[t]he new grounds of rejection are all based on the erroneous decision by the Board that the Bourgoin reference is an appropriate reference to support a rejection under 35 U.S.C. § 102 and to provide[] a primary foundational reference under 35 U.S.C. § 103 either alone, or in combination" with the secondary references.  Reh. Req. 9. According to Acme, "the failure of Bourgoin to *disclose* a material handling vehicle means that it must fail as a reference to support *any* of the rejections set forth in the new grounds of rejection." (Reh. Req. 10) (emphasis added).

Based upon Acme's arguments, we conclude that the issue stated in the Decision was too narrowly stated.  We modify the issue on appeal to be

Does Bourgoin Disclose, Or Teach Or
Suggest, A Material Handling Vehicle?

*Bourgoin discloses that its table is a material handling vehicle and alternatively suggests and teaches that its table can be used as a material handling vehicle*

Bourgoin discloses "a system for measuring the characteristics of an object," which may be a package.  Col. 1, ll. 5-8.  The system is used in an industrial environment (col. 2, ll. 58-59) and may be used in the following exemplary fields: express parcel transport and shipment of parcels; stock management, storage, handling, and warehouses; packaging.  Col. 2, l. 66-

---

[1] Under 37 C.F.R. § 41.79(b)(3), "[n]ew arguments responding to a new ground of rejection made pursuant to § 41.77(b) are permitted."

4

A20

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

col. 3, l. 4. The system includes scales 10 equipped with a weighing
platform (col. 2, ll. 16-18; col. 3, l. 26) and the object/package is placed on
the scale platform. Col. 6, ll. 10-11. In one embodiment, the system "is
composed of four hardware assemblies [including] a mechanical module
which supports the other four modules and comprises a table 21 with rollers
to facilitate its displacement." Col. 4, ll. 11-16. "[T]he system . . . is placed
on a table 21 fitted with rollers, so that it can be displaced to suit the user's
needs." Col. 3, ll. 41-43. Measurements may be carried out by a single
independent machine. Col. 2, ll. 60-63. "[T]he objects to be measured are
placed on the machine at the center of the scales for the measurements."
Col. 5, ll. 59-61. "[T]he machine may be moved in workshops or to other
sites." Col. 2, l. 6.

Although Acme asserts that the '946 Patent defines some terms (*see*
Reh. Req. 5, citing col. 2, ll. 32-41; col. 4, ll. 11-17), Acme does not cite to a
specific definition of the term "material handling vehicle." Instead, Acme
"primarily relies on the 'ordinary and customary meaning'" and asserts that
"these term clarifications act as a glossary for the meaning of these terms in
the context of the '946 Patent and the associated claims." Reh. Req. 5.
Acme also relies upon the '946 Patent's "numerous references to the specific
claim term 'material handling vehicle'" (Reh. Req. 5).

Acme acknowledges, as it must, that the '946 Patent states that "[t]he
term material handling vehicle is meant to broadly include transportation
vehicles such as, for example, but not limited to, a fork lift truck, a flatbed
truck, or a pallet truck." Reh. Req. 5, citing col. 2, ll. 38-41. Acme argues
that the word "broadly" should be considered as limited to the specific sub-

5

A21

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

species of "material handling 'transportation vehicle'" identified as trucks.
Reh. Req. 5.

We disagree with Acme's assertion. First, the '946 Patent does not
limit its reference to "transportation vehicles" only to the trucks identified at
column 2, lines 38-41. Instead, it states that its system "may be used to
determine the weight of people aboard a *transportation vehicle*, such as a
*bus*." Spec., col. 2, ll. 36-38 (emphasis added). Second, although parts of
the '946 Patent refer specifically to a "material handling vehicle 16" (*see,
e.g.* col. 2, ll. 45-46, 57; col. 4, ll. 46-47) many parts of the '946 Patent more
generally refer to element 16 as a "vehicle," rather than as the more limited
"material handling vehicle." *See, e.g.*, col. 2, ll. 61, 63; col. 3, ll. 7, 9, 20-21,
40, 47. Third, the '946 Patent repeatedly states that the concepts and
embodiments shown in the drawings are not restrictive and are only
illustrative. *See* col. 2, ll. 6-10, 25-31; col. 5, ll. 22-42.

Fourth, the '946 Patent states that it is "a system and method for
determining the dimension and weight of products on or in forklifts, pallets,
or lift trucks" (Col. 1, ll. 48-49); again, not limiting the invention to the use
of trucks. A "pallet" is, for example, "a portable platform for handling,
storing, or moving materials and packages (as in warehouses, factories, or
vehicles)." Webster's Ninth New Collegiate Dictionary (Merriam-Webster
Inc. 1986) ("Merriam-Webster") 848. A pallet is therefore not necessarily a
truck.

In addition, we note that claim 8 of the '946 Patent, as originally filed
on April 18, 2005, recited "the material handling vehicle being one of a fork
lift, a lift truck, a flat bed, and a pallet truck." Originally filed claims are

6

A22

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

part of the original disclosure. *See* MPEP 2163.05; 35 U.S.C. § 112, second paragraph ("the specification shall conclude with one or more claims"); *In re Benno*, 768 F.2d 1340, 1346 (Fed. Cir. 1985) ("claims [are] technically part of the 'specification,' 35 USC 112, 2d par."). Claim 8, as originally filed, thus recites a "fork lift," not a "fork lift truck" and a "flat bed," not a "flat bed truck," thereby disclosing and suggesting embodiments that are not "trucks." Therefore, this originally filed disclosure indicates that the '946 Patent as originally filed was not limited to trucks.

Similarly, claim 22, dependent from claim 9 and contained in the '946 Patent when it issued, recites "the material handling vehicle being one of a fork lift, a lift truck, a flat bed, and a pallet truck." Consequently, the recitation of such specific structure in claim 22, which depends from claim 9, indicates that claim 9 does not include that specific structure. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc) (the presence of a dependent claim adding a particular limitation creates a presumption that the limitation is not present in the independent claim). That is, the doctrine of claim differentiation creates a presumption that claim 9 does not contain the limitation of claim 22, as "'the presence of a dependent claim that adds a particular limitation raised a presumption that the limitation in question is not found in the independent claim.'" *Bancorp Serv. V. Sun Life Assurance Co.*, 687 F.3d 1266, 1275 (Fed. Cir. 2012) (citation omitted). *See also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (the doctrine of claim differentiation is at its strongest where Appellant wants to read a feature from a dependent claim into a term in an independent claim). The doctrine of claim differentiation therefore means

7

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

that "material handling vehicle" in claim 9 is not limited to, and does not include, the fork lift, lift truck, flat bed, or pallet truck recited in claim 22.

In addition, Acme does not cite us to, and we do not find, an explicit definition of "material handling vehicle" that requires the vehicle to be a truck. Instead, the cited portions of the '946 Patent merely describe preferred embodiments which use trucks. The Specification also uses the qualifying terms "such as" and "for example": "a transportation vehicle, such as a bus" (col. 2, ll. 37-38); "material handling vehicle . . . such as, for example, but not limited to" (col. 2, ll. 38-40). These descriptions do not limit the vehicles to trucks.

Furthermore, it is well settled that even if a patent describes only a single embodiment, the patent's claims are not limited to that embodiment absent a clear intent to limit the claims' scope using words or expressions of manifest exclusion or restriction. *Liebel-Flarsheim Co.*, 358 F.3d at 906; *See also Gillette Co. v Energizer Holdings, Inc.*, 405 F.3d 1367, 1374 (Fed. Cir. 2005) ("'[W]ords or expressions of manifest exclusion' or 'explicit' disclaimers in the specification are necessary to disavow claim scope."). Acme has not identified – nor can we find – any such manifest exclusionary or restrictive intent on this record to support Acme's sought-after narrow construction of "material handling vehicle" as Acme indicates.

This is also not a case where the Specification defines the term by implication as Acme suggests. *See* Reh. Req. 6 ("The specification clearly provides specific clarification to help interpret the plain meaning of material handling vehicle.") *See also Phillips*, 415 F3d at 1321 ("Even when guidance is not provided in explicit definitional format, the specification

8

A24

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

may define claim terms by implication such that the meaning may be found in or ascertained by a reading of the patent documents.") (citations and internal quotation marks omitted). Rather, this is a case where the recited material handling vehicle is, at best, described in connection with certain embodiments: a description that hardly limits the term's broadest reasonable interpretation in light of the Specification.

A truck, moreover, can be defined as "a small heavy rectangular frame supported on four wheels for moving heavy objects;" "a shelved stand mounted on casters." Merriam-Webster 1266. Bourgoin's table fits this definition.

Acme contends that Bourgoin's table 21 fitted with rollers does not provide any form of "transportation" because the rollers only "incidentally" allow the table to be displaced to suit the user's needs (Reh. Req. 6-7) and that the table is "a primarily stationary device." Reh. Req. 8. Acme neither cites anything in Bourgoin in support of its "incidental" and "primarily stationary" assertions nor provides any evidence in support of its contentions. Acme also does not provide a definition of "transport" that excludes a purported incidental displacement of the table. In fact, "transport" can be defined as "to transfer or convey from one place to another < mechanisms of ~ *ing* ions across a living membrane>[2]." Merriam-Webster 1255. Bourgoin's wheeled table transfers or conveys the illustrated

---

[2] "Definitions are sometimes followed by verbal illustrations that show a typical use of the word in context. These illustrations are enclosed in angle brackets and the word being illustrated is usually replaced by a lightface swung dash. The swung dash stands for the boldface entry word." Merriam-Webster 18.

9

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

machine, including the object 23 and the scales 10 from one place to another, regardless of whether the movement is incidental or not, thereby transporting them.

Our original decision states that "we do not discern that the '946 Patent provides any clear and explicit lexicographic definition of the term 'material handling vehicle.'" Decision 11. Acme has still not pointed us to any such clear and explicit lexicographic definition of the term.

Based on the above discussion, we maintain our conclusion that Bourgoin discloses a material handling vehicle. We also conclude that one of ordinary skill in the art would have viewed Bourgoin as teaching or suggesting that Bourgoin's table with rollers could be used to transport the package or object 23 from one location to another location, thereby using it as a material handling vehicle.

## DECISION

For all of the above reasons, we GRANT rehearing and modify the issue to be decided on appeal; but we DENY the relief Acme has requested and adhere to our decision that designates the new grounds of rejection.

## REHEARING GRANTED-IN-PART

This Rehearing decision "is deemed to incorporate the earlier opinion reflecting [the Board's] decision for appeal." 37 C.F.R. § 41.79(d). This Rehearing decision is hereby designated, with respect to the facts addressed here, "in effect, a new decision, . . . [and] any party may within one month of the new decision, file a further request for rehearing of the new decision under this subsection. Such request for rehearing must comply with paragraph (b) of this subsection." 37 C.F.R. § 41.77(d).

10

Appeal 2012-009300
Reexamination Control 95/001,401
Patent 7,757,946 B2

PATENT OWNER:
BARNES & THORNBURG LLP
ONE NORTH WACKER DRIVE
SUITE 4400
CHICAGO, IL 60606-2809

THIRD PARTY REQUESTER:
ECKERT SEAMANS CHERIN & MELLOTT, LLC
600 GRANT STREET, 44TH FLOOR
PITTSBURGH, PA 15219

11



US007757946B2

(12) **United States Patent**
Kienzle-Lietl

(10) Patent No.: **US 7,757,946 B2**
(45) Date of Patent: **Jul. 20, 2010**

(54) **MATERIAL TRANSPORT IN-MOTION PRODUCT DIMENSIONING SYSTEM AND METHOD**

(75) Inventor: **Kathleen G. Kienzle-Lietl**, Barrington, IL (US)

(73) Assignee: **Acme Scale Company, Inc.**, Villa Park, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 230 days.

(21) Appl. No.: **11/108,271**

(22) Filed: **Apr. 18, 2005**

(65) **Prior Publication Data**

US 2005/0240317 A1    Oct. 27, 2005

**Related U.S. Application Data**

(60) Provisional application No. 60/562,961, filed on Apr. 16, 2004.

(51) **Int. Cl.**
    *G06F 19/00*      (2006.01)
(52) **U.S. Cl.** ...................................... **235/384**; 235/383
(58) **Field of Classification Search** ................ 235/384, 235/383; 356/376, 379; 700/215
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 3,819,918 A | 6/1974 | Hale | |
| 4,402,609 A | 9/1983 | Fetzer et al. | |
| 4,605,081 A * | 8/1986 | Helmly et al. | 177/25.13 |
| 5,184,733 A | 2/1993 | Amarson et al. | |
| 5,526,615 A * | 6/1996 | Kaizu et al. | 52/79.6 |
| 5,636,028 A | 6/1997 | Stringer et al. | |
| 5,699,161 A | 12/1997 | Woodworth | |
| 5,854,679 A | 12/1998 | Bourgoin et al. | |
| 5,864,404 A | 1/1999 | Amorosi | |

| | | | |
|---|---|---|---|
| 5,903,354 A | 5/1999 | Bengala et al. | |
| 5,923,428 A | 7/1999 | Woodworth | |
| 5,991,041 A | 11/1999 | Woodworth | |
| 6,011,255 A | 1/2000 | Rueb et al. | |
| 6,061,645 A | 5/2000 | Bengala et al. | |
| 6,137,577 A * | 10/2000 | Woodworth | 356/623 |
| 6,611,787 B2 * | 8/2003 | Stringer et al. | 702/159 |
| 6,618,155 B2 | 9/2003 | Metcalfe et al. | |
| 6,669,089 B2 * | 12/2003 | Cybulski et al. | 235/385 |

(Continued)

FOREIGN PATENT DOCUMENTS

EP        548464        6/2003

(Continued)

OTHER PUBLICATIONS

Specification sheet for LMS 200/291 Volume Measurement System from Sick Ag; available at www.sickusa.com, pp. 88, 112 and 113.

*Primary Examiner*—Thien M Le
(74) *Attorney, Agent, or Firm*—Barnes & Thornburg LLP

(57)        **ABSTRACT**

Methods, systems, and devices to obtain dimensions of an article or product in association with material handling vehicles are disclosed. A dimension detection device is installed in an enclosure and is used to acquire geometrical dimensions of the object in association with the vehicle. A predetermined dimension of the vehicle is subtracted from the overall detected dimension to determine the dimensions, including weight, of the product alone. One or more dimension detection devices may also be positioned on a mast or other portion of the material handling vehicle allowing the material handling vehicle to act as a mobile product dimensioning system.

**23 Claims, 4 Drawing Sheets**



**US 7,757,946 B2**

Page 2

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 6,767,175 | B2 | 7/2004 | Fujita et al. |
| 2001/0041948 | A1 * | 11/2001 | Ross et al. .................. 700/226 |
| 2002/0001091 | A1 | 1/2002 | Wurz et al. |
| 2002/0093667 | A1 | 7/2002 | Hoffmann |
| 2003/0042303 | A1 | 3/2003 | Tsikos et al. |
| 2003/0042304 | A1 | 3/2003 | Knowles et al. |
| 2003/0080192 | A1 | 5/2003 | Tsikos et al. |

| | | | |
|---|---|---|---|
| 2003/0184737 | A1 | 10/2003 | Gehring |
| 2004/0102870 | A1 * | 5/2004 | Andersen et al. ............ 700/215 |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 59-174722 | 10/1984 |
| JP | 61-031906 | 2/1986 |

* cited by examiner

**FIG. 1**



**FIG. 2**



# FIG. 3



40 — Provide Tunnel

42 — Vehicle Passes Through Tunnel

44 — Identify Vehicle By Barcode Or RFID

46 — Transmit And Analyze Data To Determine Product Dimensions

48 — Network With Other Databases

A34

**FIG. 4**

US 7,757,946 B2

1

## MATERIAL TRANSPORT IN-MOTION PRODUCT DIMENSIONING SYSTEM AND METHOD

### RELATED APPLICATION

This application claims the benefit of U.S. Provisional Application No. 60/562,961 filed Apr. 16, 2004, the disclosure of which is hereby incorporated by reference in its entirety.

### BACKGROUND AND SUMMARY

Product handling, classification, and distribution systems employ a variety of methods to determine dimensions of freight, cargo, and the like. A dimension is a calculation of length, width, and height of an object, and for purposes of this disclosure, a weight can also be included. Product dimensioning is used for a variety of purposes including product consistency, inventory monitoring, revenue enhancement for the transportation industry, and placement onto air, rail, and ground transport vehicles. Product dimensioning may also be used for security purposes, such as monitoring for cargo of unusually large weight being loaded onto an airplane for purposes of weight and balance, revenue calculations, and other purposes. An unusual weight may indicate that something other than the reported contents is present, such as components for a bomb or other weapon.

Current systems employ a variety of techniques, including stationary or static dimensioning or manual dimensioning. Conveyor systems also exist that pass objects of various dimension through laser curtains, or image such objects using cameras, that then use computers to determine dimension. In such systems, a product is placed on a conveyor and is conveyed through a "U" shaped tunnel that uses laser scanning to capture the dimension in motion. Such systems can be effective for small parcels that are bundled downstream of the conveyor. However, this process can be time consuming for applications that require large quantities of products, possibly of varying sizes, such as, for example, quantities that fill an entire forklift pallet, or lift truck. Current systems present several inefficiencies in this situation related to unloading the truck, passing the items individually through the conveyor, and reloading the truck. There is a need to scan an entire pallet or entire truck load contemporaneously, in a fast, automated process.

Briefly, and in accordance with the foregoing, disclosed is a system and method for determining the dimension and weight of products on or in forklifts, pallets, or lift trucks. One embodiment of the present system and method employs a tunnel or some other defined space defining a space sufficient to allow passage of a material handling vehicle. The tunnel is equipped with one or more dimension detection devices positioned to capture the entire dimension of the material handling vehicle and product positioned thereon. Alternatively, the tunnel is fitted with scanning technology suitable for detecting product edges that have been treated with detectable paint, tape, wrapping or other dimension detection device, thereby allowing the dimensions to be the net of the transport vehicle. The present system also includes a computer system in communication with the tunnel, for receiving data therefrom. The computer system subtracts a predetermined or recalled dimension for the material handling vehicle from the total dimension of the product and material handling vehicle to determine the dimensions of the product alone.

Another embodiment of the present disclosure employs one or more dimensioning device(s) mounted at a location on

2

a lift truck. This feature allows the lift truck to become a mobile product dimensioning system.

### BRIEF DESCRIPTION OF THE DRAWINGS

The drawings are provided to illustrate some of the embodiments of the disclosure. It is envisioned that alternate configurations of the embodiments of the present disclosure maybe adopted without deviating from the disclosure as illustrated in these drawings.

FIG. 1 is a simplified diagrammatic view of a system for dimensioning product while aboard a material handling vehicle;

FIG. 2 is another embodiment of the system of FIG. 1;

FIG. 3 is a flowchart showing the steps of calculating the dimensions of the product of FIG. 1; and

FIG. 4 is another embodiment of the system of FIG. 1.

The exemplification set out herein illustrates embodiments of the disclosure that is not to be construed as limiting the scope of the disclosure in any manner.

### DETAILED DESCRIPTION OF THE DISCLOSURE

While the concepts of the present disclosure are illustrated and described in detail in the drawings and the description below, such an illustration and description is to be considered as exemplary and not restrictive in character, it being understood that only the illustrative embodiment is shown and described and that all changes and modifications that come within the spirit of the disclosure are desired to be protected.

The term "product" or "article" as used in this disclosure refers to any physical entity such as, for example, but not limited to, a manufactured product, cargo, and any other material that is transported including live animals, plants, and people. It is thus envisioned that the current system may be used to determine the weight of people aboard a transportation vehicle, such as a bus. The term material handling vehicle is meant to broadly include transportation vehicles such as, for example, but not limited to, a fork lift truck, a flatbed truck, or a pallet truck.

FIG. 1 is a simplified diagrammatic view of a system 10 for dimensioning product loaded onto a material handling vehicle. System 10 includes a passage or tunnel 12 defining a passage or space 14 large enough for passage of a material handling vehicle 16 and product 18 present thereon to pass therethrough. Tunnel 12 may be any enclosure or structure suitable for allowing such passage, including a flexible canopy, or rigid structure, such as a structure constructed from metal or plastic. Product 18 may be of any shape including cubic, cylindrical, spherical, or irregular in shape and may not be in a package, but may be in a conformal fitting covering, such as a fabric, sheet or other irregular generally form-defined cover. Although an inverted U-shaped tunnel is shown, tunnel 12 may be any shape including any combination of a bottom and two side structures defining a plane through which a material handling vehicle 16 may pass.

Tunnel 12 is fitted with at least one dimension detection device 20 such as a laser scanner. Dimension detection device (s) 20 is positioned along tunnel 12 to allow for detection generally as vehicle 16 passes therethrough. One or more detection devices 20 may also be angled or positioned to scan vehicle 16 during approach toward tunnel 12 or after exit of tunnel 12. One laser scanner suitable for use in system 10 is manufactured by SICK AG (Düsseldorf, Germany; catalog numbers: VMS 200, VMS 400). Other detection devices 20 that can be used include radio-frequency sensors, ultrasound

A36

US 7,757,946 B2

3

sensors, inductive, capacitive or magnetic proximity sensors, magnetic cylinder sensors, photoelectric switches, contrast and luminescence scanners, color sensors, fork photoelectric switches, light grids, distance sensors, position finders, and light-section sensors, vision capture, and cameras.

System 10 may be operated continuously or activated upon entry of vehicle 16. As such, system 10 may be fitted with a motion detector 22. System 10 may also include a weighing system 23 for weighing the combined vehicle 16 and product 18. The weight determined by the weighing system 23 may be used in combination with visual and other dimensioning technologies that can be employed in the current system 10.

System 10 may also include a scanner or barcode reader 24 of known construction. Barcode reader 24 is mounted on or in the vicinity of tunnel 12 or may be a handheld barcode reader 24 for manual operation. Barcode reader 24 may read industry standard barcode, and can also be any other machine vision system for scanning or detecting indicia. Barcode reader 24 is used to determine the identity and other information about vehicles 16 passing through tunnel 12, provided vehicle 16 has been fitted with a suitable barcode label or has other detectable indicia thereon. Other vehicle information contained in the bar code may be a vehicle identification number, vehicle class code, and vehicle dimension including weight and load capacity.

System 10 also includes a computer system 25 in communication with tunnel 12 via communications path 26, which may be any suitable wired or wireless connection. Computer system 25, may be a stand-alone computer, server, or computer attached to a network, intranet, or the Internet. Computer system 25 may also be, but is not limited to, a handheld device, PDA, laptop, or other mobile computing and data collection device. Computer system 25 receives dimensioning data from detection devices 20 and processes such data as described below. In an embodiment having a barcode reader 24, barcode reader 24 is also in communication with computer system 25, either through direct wired or wireless connection, or indirectly, such as the barcode reader 22 being attached to computer system 25 via tunnel 12.

Vehicle 16, product 18, or both vehicle 16 and product 18 can be marked distinguishably with an appropriate material such as, for example, but not limited to, a fluorescent or reflective paint, a marker tape, covering or any other identifiable material or substance. Where such marking is desired, system 10 may also include an optical detection device 28 such as, for example, a fluorescence scanner, to discriminate between the vehicle 16 and product 18. The optical detection device 28 and a laser detection devices 20 can be synchronized to operate in tandem to obtain and process the dimensions of the product 18 and/or vehicle 16. A hybrid optical detection and dimension detection device may be used as well.

As shown in FIG. 2, in another embodiment, Vehicle 16 or product 18 may also be fitted with a radio frequency identification (RFID) tag 30 for detection by a radio frequency transceiver 32 in communication with tunnel 12 and/or computer system 25 to identify the vehicle 16 and/or product 18. Computer system 25 may also include standard input devices, such as a keyboard, touch and/or voice control for manual entry of details identifying product 18 or vehicle 16.

Another embodiment of the present disclosure is shown in FIG. 4 which shows detection device 20 being mounted on a mast 50 of vehicle 16. Mast 50 generally refers to a portion of vehicle 16 used to support, raise, and/or lower a pallet or other product carrying structure. Placement of detection device 20 obviates the need for a separate tunnel. In this manner, vehicle 16 becomes a mobile dimensioning device. Although one

4

detection device 20 is shown, additional detection devices 20 may be positioned at other locations on vehicle 16 as well. The plurality of detection devices 20 may be used separately or in combination to dimension product on vehicle 16. Detection device 20 may also be positioned on a location of vehicle 20 other than on the mast 50 and still allow dimensioning without the use of a tunnel, such as the ceiling of vehicle 20, framework, or other support structure.

Computer system 25 contains or is in communication with one or more software modules to process the geometrical dimensions data to obtain dimension measurements. The term "computer module" or "software module" referenced in this disclosure is meant to be broadly interpreted and cover various types of software code including but not limited to routines, functions, objects, libraries, classes, members, packages, procedures, methods, or lines of code together performing similar functionality to these types of coding. The components of the present disclosure are described herein in terms of functional block components, flow charts and various processing steps. As such, it should be appreciated that such functional blocks may be realized by any number of hardware and/or software components configured to perform the specified functions. For example, the present disclosure may employ various integrated circuit components, e.g., memory elements, processing elements, logic elements, look-up tables, and the like, which may carry out a variety of functions under the control of one or more microprocessors or other control devices. Similarly, the software elements of the present invention may be implemented with any programming or scripting language such as C, SQL, C++, Java, COBOL, assembler, PERL, or the like, with the various algorithms being implemented with any combination of data structures, objects, processes, routines or other programming elements. Further, it should be noted that the present disclosure may employ any number of conventional techniques for data transmission, signaling, data processing, network control, and the like as well as those yet to be conceived.

Data collected from tunnel 12 and associated detection devices 20, and any other user input devices, is used to calculate the dimensions of the product. Computer system 25 can also be programmed to interface with any other database to generate freight codes and transportation costs, calculate inventory, quality control based on product size, and make adjustments to warehouse management records.

FIG. 3 shows the steps in a method of obtaining product 18 dimensions, while product 18 is present on material handling vehicle 16. In a first step 40, a tunnel 12 is provided having at least one dimension detection device 20 such as a laser scanning measurement system. In a second step 42, the detection device 20 is operated generally as vehicle 16 passes through a passage or opening 14 in the tunnel 12. The detection device(s) are operated to acquire data corresponding to the dimensions of product 18 that is present on vehicle 16. In a third step 44, vehicle 16 may be identified by scanning indicia thereon, such as by reading a barcode using a barcode reader 24. Alternatively, an RFID tag associated with the vehicle 16 or product 18 may be operated to send a signal containing identification information to tunnel 12.

In a fourth step 46, the data is transmitted to a computer system 25 for analysis. The software module loaded onto the computer system 25 is used to calculate the dimensions, including weight, of the product alone. This may be achieved by discriminating the boundaries of vehicle 16 by a distinguishing paint or tape, or otherwise obtaining the dimensions of the vehicle alone, and subtracting that dimension from the overall dimension of vehicle 16 and product 18. The dimension of vehicle 16 may have been previously determined or

US 7,757,946 B2

5      6

stored in computer system **25** and can thus be retrieved for this calculation. The retrieved or calculated dimension of vehicle **16** is shall be referred to as a "known dimension" in this disclosure. The vehicle's dimension may also be part of the information retrieved from the bar code or RFID tag. Alternatively, the dimension of vehicle **16** can be determined based on manufacturer's specifications for that particular vehicle **16**. Finally, the weight of vehicle **16** may have been determined using the weighing system **23** when vehicle **16** was previously run through tunnel **12** without any product **18** loaded thereon where applicable if the material handling vehicle **16** is passing over a floor scale. Alternatively, the weight of the product can be ascertained from a vehicle mounted scale or gauge.

In another step **48**, with the dimension of the product **18** being determined, the computer system **25** can network or interface with other databases related to freight classification, storage or cargo space requirements, that may be useful if the product is being loaded onto larger transport vehicles, compliance with government regulations, customs rules, and so forth.

While embodiments have been illustrated and described in the drawings and foregoing description, such illustrations and descriptions are considered to be exemplary and not restrictive in character, it being understood that only illustrative embodiments have been shown and described and that all changes and modifications that come within the spirit of the invention are desired to be protected. The applicants have provided description and figures which are intended as illustrations of embodiments of the disclosure, and are not intended to be construed as containing or implying limitation of the disclosure to those embodiments. There are a plurality of advantages of the present disclosure arising from various features set forth in the description. It will be noted that alternative embodiments of the disclosure may not include all of the features described yet still benefit from at least some of the advantages of such features. Those of ordinary skill in the art may readily devise their own implementations of the disclosure and associated methods, without undue experimentation, that incorporate one or more of the features of the disclosure and fall within the spirit and scope of the present disclosure and the appended claims.

What is claimed is:

**1**. A system for dimensioning at least one discrete article carried on a material handling vehicle, the system comprising:

    a passage, the passage defining a space sufficient to allow passage of a material handling vehicle having a portion adapted to support, raise and lower a pallet carrying an article, the material handling vehicle having at least one known linear dimension;

    at least one active linear dimension detection device for determining a combination dimension, the combination dimension being an aggregate linear dimension of the at least one discrete article carried on the material handling vehicle and the material handling vehicle; and

    a computer system in communication with the at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article by subtracting the known linear dimension from the combination dimension.

**2**. The system of claim **1**, further comprising the at least one linear dimension detection device being positioned along the passage.

**3**. The system of claim **1**, further comprising the at least one linear dimension detection device being one or more of a laser scanner, a radio-frequency sensor, an ultrasound sensor, an inductive capacitance sensor, a magnetic proximity sensor, a magnetic cylinder sensor, a photoelectric switch, a contrast luminescence scanner, a color sensor, a fork photoelectric switch, a light grid, a distance sensor, a position finder, a light-section sensor, a vision capture, and a camera.

**4**. The system of claim **1**, further comprising a machine readable code on the material handling vehicle, the machine readable code being for one of identifying the material handling vehicle to retrieve the known linear dimension and communicating the known linear dimension.

**5**. The system of claim **4**, further comprising the machine readable code being one of a barcode and an RFID.

**6**. The system of claim **1**, further comprising an identifiable substance positioned along the boundaries of one of the material handling vehicle and the article, the identifiable substance being detectable by the at least one linear dimension detection device to discriminate between the article and material handling vehicle.

**7**. The system of claim **6**, further comprising the identifiable substance being one of a fluorescent paint, a reflective paint, and a marker tape.

**8**. The system of claim **1**, further comprising the material handling vehicle being one of a fork lift, a lift truck, a flat bed, and a pallet truck.

**9**. A system for actively dimensioning an article, the system comprising:

    a material handling vehicle,

    at least one active linear dimension detection device attached to a portion of the material handling vehicle, the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle; and

    a computer system in communication with the at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article.

**10**. The system of claim **9**, further comprising the portion of the material handling vehicle being a mast.

**11**. A system for dimensioning at least one discrete article carried on a material handling vehicle, the system comprising:

    a passage, the passage defining a space sufficient to allow passage of a material handling vehicle, the material handling vehicle having at least one known linear dimension, the material handling vehicle being a truck having wheels for moving the vehicle over roadways;

    at least one active linear dimension detection device for determining a combination dimension, the combination dimension being an aggregate dimension of the at least one discrete article carried on the material handling vehicle and the material handling vehicle; and

    a program module in communication with the at least one linear dimension detection device, the program module being adapted to determine at least one linear dimension of the article by subtracting the known dimension from the combination dimension.

**12**. A method of dimensioning at least one discrete article carried on a material handling vehicle, the method comprising the steps of:

    providing a passage, the passage defining a space sufficient to allow passage of a material handling vehicle, the material handling vehicle having at least one known linear dimension, the material handling vehicle being a truck having wheels adapted to drive the material handling vehicle over roadways;

US 7,757,946 B2

7

8

providing at least one active linear dimension detection device associated with the passage;

passing the material handling vehicle from one side of the passage through the passage so that the material handling vehicle exits the passage;

detecting a combination dimension of the material handling vehicle and the at least one discrete article carried on a material handling vehicle while passing the material handling vehicle through the passage; and

determining at least one linear dimension of the article by subtracting the known dimension from the combination dimension.

**13**. The method of claim **12**, further comprising the steps of:

providing a machine readable code on the material handling device; and

reading the machine readable code to identify the material handling vehicle to retrieve the known dimension.

**14**. The method of claim **13**, further comprising retrieving the known dimension from the machine readable code.

**15**. The method of claim **13**, further comprising:

providing a computer system in communication with the at least one linear dimension detection device, the computer system being operative to store and retrieve at least one known dimension for at least one material handling vehicle; and

retrieving the known dimension for the material handling vehicle from the computer system by identifying the material handling vehicle using the machine readable code.

**16**. A method of dimensioning at least one discrete article carried on a material handling vehicle, the method comprising the steps of:

providing a material handling vehicle having the article loaded thereon;

positioning an identifiable substance along the boundaries of one of the material handling vehicle and the article; and

discriminating between the article and the material handling vehicle by detecting the identifiable substance to detect a linear dimension of the article.

**17**. The method of claim **16**, further comprising:

providing a passage, the passage defining a space sufficient to allow passage of the material handling vehicle;

positioning a material detection device along the passage; and

performing the step of discriminating between the article and the material handling vehicle to detect a linear dimension of the article as the material handling vehicle passes through the passage.

**18**. The method of claim **16**, further comprising providing at least one active linear dimension detection device on a portion of the material handling vehicle and performing the step of discriminating between the article and the material

handling vehicle to detect a linear dimension of the article when the article is loaded onto the material handling vehicle.

**19**. The method of claim **18**, further comprising detecting a linear dimension of the article while the material handling vehicle is in motion.

**20**. A method of actively dimensioning an article, the method comprising the steps of:

providing a material handling vehicle;

positioning at least one active linear dimension detection device on a portion of the material handling vehicle and retaining the device thereon to move with the vehicle;

positioning at least one article on the material handling vehicle; and

actively detecting at least one linear dimension of the article while positioned on the vehicle using the at least one linear dimension detection device.

**21**. The method of claim **20**, further comprising using the at least one linear dimension to determine at least one of a shipping weight, a freight classification, a compliance with a government regulation, a compliance with a customs rule, and a cargo space requirement.

**22**. The system of claim **9**, further comprising the material handling vehicle being one of a fork lift, a lift truck, a flat bed, and a pallet truck.

**23**. A method of dimensioning at least one discrete article carried on a material handling vehicle, the method comprising the steps of:

providing a passage, the passage defining a space sufficient to allow passage of a material handling vehicle, the material handling vehicle having at least one known linear dimension;

providing at least one linear dimension detection device associated with the passage;

passing the material handling vehicle from one side of the passage through the passage so that the material handling vehicle exits the passage;

detecting a combination dimension of the material handling vehicle and the at least one discrete article carried on the material handling vehicle while passing the material handling vehicle through the passage;

determining at least one linear dimension of the at least one discrete article by subtracting the known dimension from the combination dimension, and

passing a different material handling vehicle having at least one known linear dimension from one side of the passage through the passage so that the different material handling vehicle exits the passage;

detecting a combination dimension of the different material handling vehicle and another at least one discrete article while passing the material handling vehicle through the passage; and

determining at least one linear dimension of the another article by subtracting the known dimension from the combination dimension.

\*    \*    \*    \*    \*

# United States Court of Appeals
# for the Federal Circuit

*ACME Scale Company, Inc. v. LTS Scale Company, LLC,* 2014-1721

## <u>CERTIFICATE OF SERVICE</u>

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by BARNES & THORNBURG LLP, Attorneys for Appellant to print this document.  I am an employee of Counsel Press.

On **October 14, 2014** counsel for Appellant has authorized me to electronically file the foregoing **Brief for Appellant** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

> Bridget Heffernan Labutta, Esq.
> Eckert Seamans Cherin & Mellott, LLC
> Two Liberty Place
> 50 South 16th Street, 22nd Floor
> Philadelphia, PA 19102
> 215-851-6623
> blabutta@eckertseamans.com

Paper copies will also be mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

October 14, 2014

/s/ Robyn Cocho     .
Robyn Cocho
Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

  X   The brief contains 5,834 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii),or

      The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

  X   The brief has been prepared in a proportionally spaced typeface using MS Word 2013 in a 14 point Times New Roman font or

      The brief has been prepared in a monospaced typeface using _____ _____in a ___ characters per inch_____ font.

October 14, 2014             /s/ Grant H. Peters_____
Date                              Grant H. Peters
                                   Attorney for Patent Owner/ Appellant
                                   ACME SCALE COMPANY, INC.