**2014-1721**

In The

# United States Court Of Appeals
# For The Federal Circuit

## ACME SCALE COMPANY, INC.,

*Appellant,*

v.

## LTS SCALE COMPANY, LLC,

*Appellee.*

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE
IN REEXAMINATION NO. 95/001,401

_____

**BRIEF OF APPELLEE**

_____

**Bridget Heffernan Labutta**
ECKERT SEAMANS CHERIN
 & MELLOTT, LLC
**Two Liberty Place
50 South 16th Street
22nd Floor
Philadelphia, PA  19102
(215) 851-6623**

Dated: *December 8, 2014*                      *Attorney for Appellee*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

## <u>CERTIFICATE OF INTEREST</u>

Counsel for Appellee certifies the following:

1.    The full name of every party represented by me is:

    LTS Scale Company, LLC

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

    n/a

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

    LTS/FSC Main Street, LLC, a Delaware limited liability company; and Main Street Capital Heritage Co., L.L.C., a Delaware limited liability company

4.    The names of all law firms and the partners or associates that appeared for the party now represented by me in the agency action or are expected to appear in this Court are:

    Bridget Heffernan Labutta, Esq. and Brij K. Agarwal, Esq., both of Eckert Seamans Cherin & Mellott, LLC

Dated: December 8, 2014        /s/ Bridget Heffernan Labutta
                              Bridget Heffernan Labutta

                              ***Attorney for Appellee***

# TABLE OF CONTENTS

**PAGE:**

CERTIFICATE OF INTEREST ...................................................................i

TABLE OF CONTENTS........................................................................ ii

TABLE OF AUTHORITIES ..................................................................iv

I.    STATEMENT REGARDING ORAL ARGUMENT ....................................1

II.   STATEMENT OF RELATED CASES.........................................................1

III.  JURISDICTIONAL STATEMENT ..............................................................1

IV.   STATEMENT OF ISSUES ........................................................................2

V.    STATEMENT OF THE CASE SETTING OUT THE FACTS
      RELEVANT TO THE ISSUES.......................................................3

VI.   SUMMARY OF ARGUMENT...................................................................9

VII.  ARGUMENT..........................................................................................14

      Standard of Review

      A.   This Court Does Not Have Jurisdiction Over Acme's Appeal ...........15

      B.   The Claim Rejections That Were Imposed by the Board and
           Which  Acme Has Not Challenged in this Court are Dispositive
           of the Non-Allowability of All of the Claims at Issue and are
           Thus Dispositive of This Entire Appeal..............................................17

      C.   The Legal Standard to Employ when Interpreting a Limitation
           of a Patent Claim that is the Subject of a Reexamination
           Proceeding is the "the Broadest Reasonable Interpretation
           Consistent with Specification"..........................................................21

      D.   Substantial Evidence Supports the Board's Determination that
           the Claim Term "Material Handling Vehicle" Encompasses the
           Wheeled Platform of Bourgoin ........................................................28

    E.    The Claims at Issue Would Have Been Obvious at the Time of the (Purported) Invention to a Person of Ordinary Skill in the Field of Article Dimensioning...........................................................44

VIII.  CONCLUSION AND STATEMENT OF RELIEF SOUGHT.....................49

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**PAGE(S):**

## CASES:

*In re Abbott Diabetes Care Inc.*,
  696 F.3d 1142 (Fed. Cir. 2012) ....................................................15

*In re American Academic Science Techncal Center*,
  367 F.3d 1359 (Fed. Cir. 2004) ...........................................*passim*

*Consolidated Edison Co. v. NLRB*,
  305 U.S. 197 (1938)..............................................................14, 28

*In re Glatt Air Techniques*,
  630 F.3d 1026 (Fed. Cir. 2011) ....................................................14

*In re Gleave*,
  560 F.3d 1331 (Fed. Cir. 2009) ...............................................15, 28

*In re Kotzab*,
  217 F.3d 1365 (Fed. Cir. 2000) ...............................................14, 28

*Pragmatus AV, LLC v. Facebook, Inc.*,
  2012 U.S. Dist. LEXIS 14824 (N.D. Cal., Feb. 6, 2012).............16

*Randall Manufacturing v. Rea*,
  733 F.3d 755 (Fed. Cir. 2013) .....................................................14

*Scripps Clinic & Research Foundation v. Genentech Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991) ....................................................34

*In re Morsa*,
  713 F.3d 104 (Fed. Cir. 2013) .....................................................14

*In re Suitco Surface, Inc.*,
  603 F.3d 1255 (Fed. Cir. 2010) ...............................................25, 26

*In re Sullivan*,
  498 F.3d 1345 (Fed. Cir. 2007) ...............................................14, 29

*In re Zletz*,
   893 F.2d 319 (Fed. Cir. 1989) ....................................................................22

*In re Zurko*,
   258 F.3d 1379 (Fed. Cir. 2001) ............................................................14, 28

## STATUTES AND OTHER AUTHORITIES:

28 U.S.C. § 1295(a)(4)(A) ........................................................................1

35 U.S.C. § 102(b) ..........................................................................*passim*

35 U.S.C. § 103(a) .......................................................................... *passim*

37 C.F.R. § 1.913 ....................................................................................4

37 C.F.R. §§ 1.983 and 41.81 ..............................................................1, 15

37 C.F.R. § 41.77(d) ..............................................................................16

37 C.F.R. § 41.79 ....................................................................................8

MPEP § 2111.01 ..................................................................5, 21, 23, 24

MPEP § 2143 .......................................................................................46

## I.    STATEMENT REGARDING ORAL ARGUMENT

Appellee LTS Scale Company, LLC ("LTS") does not seek oral argument and avers that oral argument is unnecessary because the written record sufficiently presents the parties' respective positions.

## II.    STATEMENT OF RELATED CASES

LTS is not aware of any pending suit in this or any other court that will directly affect or be directly affected by this Court's decision in the instant Appeal.

## III.    JURISDICTIONAL STATEMENT

This Court has exclusive jurisdiction of an appeal from a decision of the Patent Trial and Appeal Board ("Board") with respect to an *inter partes* reexamination proceeding, pursuant to 28 U.S.C. § 1295(a)(4)(A).

However, a party to an *inter partes* reexamination proceeding who is dissatisfied with the Board's decision may not appeal to this Court until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board.  37 C.F.R. §§ 1.983 and 41.81.

Appellant Acme Scale Company, Inc. ("Acme") is appealing the Board's Decision on Rehearing dated April 29, 2014 (the "Rehearing Decision") [Appendix pp. 17-27 (hereinafter "A[page number(s)]"] regarding Acme's U.S. Patent No. 7,757,946 (the "Acme Patent") [A30-39].   The Rehearing Decision denied in

relevant part Acme's request for rehearing of the Board's Decision on Appeal dated May 18, 2013 (the "Board Decision") in an *inter partes* reexamination of the Acme Patent.  [A1-16].

For reasons that are set forth in greater detail below, this Court does not have jurisdiction over Acme's Appeal of the Rehearing Decision because Acme failed to exhaust its right to request further rehearing before the Board.   The Board specifically designated the Rehearing Decision "in effect, a new decision" and stated that "any party may within one month of the new decision, file a further request for rehearing of the new decision."   [A26].   Acme failed to seek the available relief from the Board by the May 29, 2014, deadline, and rather waited until June 24, 2014, to initiate its Appeal of the Rehearing Decision to this Court. [A465-466].

As such, the Rehearing Decision was not final and appealable, and this Court cannot exercise jurisdiction over Acme's Appeal.

## IV.   <u>STATEMENT OF ISSUES</u>

The questions on appeal are as follows:

A.   Has Acme's right to request rehearing been exhausted and, accordingly, is the Rehearing Decision final and appealable such as would enable this Court to assert jurisdiction over this Appeal?

B.     Are the claim rejections that were imposed by the Board and which Acme has not challenged in this Court dispositive of the non-allowability of all of the claims at issue, and thus dispositive of this entire Appeal?

C.     Is "the broadest reasonable interpretation consistent with the specification" the proper legal standard to employ when interpreting the term "material handling vehicle" that is recited in the claims at issue?

D.     Does substantial evidence support the Board's determination that the claim term "material handling vehicle" encompasses the wheeled platform that is shown and described in U.S. Patent No. 5,854,679 ("Bourgoin")?

E.     Would the claims at issue have been obvious at the time of the (purported) invention to a person of ordinary skill in the field of article dimensioning?

## V.     STATEMENT OF THE CASE SETTING OUT THE FACTS RELEVANT TO THE ISSUES

On July 20, 2010, the United States Patent and Trademark Office (the "USPTO") issued the Acme Patent in the name of Kathleen G. Kienzle-Lietl and assigned to Acme.  [A30-39].  The Acme Patent is entitled "Material Transport In-Motion Product Dimensioning System and Method" and includes claims that are directed toward systems and methods for detecting the physical dimensions of an object.  Certain of the claims involve a dimension detection device being attached to or positioned on a "material handling vehicle".

3

On the very same day that the Acme Patent issued, LTS filed with the USPTO a "Request For *Inter Partes* Reexamination of U.S. Patent No. 7,757,946 Pursuant to 37 C.F.R. § 1.913" (the "Request for Reexamination") [A40-201] wherein LTS requested *inter partes* reexamination of all of the claims of the Acme Patent. Specifically, *inter partes* reexamination of each of Claims 1-23 was requested in view of:

U.S. Patent No. 6,115,114 ("Berg") [A132-158];

U.S. Patent No. 5,086,389 ("Hassett") [A99-117];

Bourgoin [A118-131];

U.S. Patent Application Publication No. 2004/0102870 ("Andersen") [A173-190]; and

U.S. Patent No. 6,983,883 ("Ridling") [A159-172].

[A42]. Of these five documents, only Bourgoin had been made of record during prosecution of the Acme Patent, the other four documents being newly cited references.

The Request for Reexamination included numerous proposed rejections of Claims 1-23 in view of the five aforementioned references. Some of the rejections were over one of the five references individually, and other rejections were over two or more of the five references in combination. A number of the proposed rejections were adopted by the Examiner. However, the Examiner refused to adopt

any of the proposed rejections that were based in whole or in part upon Bourgoin, and it is reiterated that this was the only one of the five aforementioned references that had been made of record in the Acme Patent.

Throughout the course of the Reexamination proceeding, the Examiner refused to interpret the claim term "material handling vehicle" in the fashion that is required under USPTO examination procedures and that is required by this Court, namely according to "the broadest reasonable interpretation consistent with the specification".  MPEP § 2111.01; *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d 1359, 1364 (Fed. Cir. 2004).  Instead, the Examiner insisted upon reading limitations from the specification into the claims, a practice against which this Court has cautioned.  *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1369.

The Examiner's interpretation of the claim term "material handling vehicle" was pertinent to the application of the Bourgoin reference to the claims at issue. Both parties agree that Bourgoin discloses a wheeled platform having a computer and a dimensioning system self-contained thereon, and that an article is placed onto the wheeled platform and its physical dimensions are measured by the dimensioning system.  The fact that the platform of Bourgoin was wheeled thus became a primary issue in the reexamination.  LTS had consistently argued to the Examiner that the broadest reasonable interpretation consistent with the specification of the term "material handling vehicle" encompassed the wheeled

platform in Bourgoin.  However, the Examiner instead developed a narrowed interpretation of the claim term, and this narrowed interpretation had the effect of preventing the substantive content of Bourgoin from being applied to the claims at issue.

For instance, in the Action Closing Prosecution dated April 1, 2011 [A272-286], the Examiner relied upon a statement in the Acme Patent in order to formulate the narrowed interpretation of "material handling vehicle".  Specifically, the Examiner read into the claims the sentence from the Acme Patent "The term material handling vehicle is meant to broadly include transportation vehicles such as, for example, but not limited to, a fork lift truck, a flatbed truck, or a pallet truck" [A36, col. 2, ll. 38-41].  The Examiner thus interpreted the claim term "material handling vehicle" to mean at most *only* "fork lifts, pallet lifts, order pickers, lift trucks and the like" [A281], which interpretation effectively precluded the application of the wheeled platform of Bourgoin to the claims.  On various occasions, LTS had pointed out to the Examiner that U.S. Patent No. 3,950,005 ("Patterson") [A538-542] refers to hand trucks and wheelbarrows as likewise each being a "material handling vehicle".  The Examiner responded to this argument by conceding that other vehicles are referred to as material handling vehicles, however the Examiner went on to say "but their use is not contemplated in the disclosure of the '946 Patent [i.e., the Acme Patent]".  [A282].

6

Throughout the entirety of the *inter partes* reexamination proceeding, the Examiner neglected to interpret the claim term "material handling vehicle" according to its "broadest reasonable interpretation consistent with the specification" as is required by this Court and the USPTO. The Examiner went on to confirm the patentability of Claims 9-10 and 20-22 despite the arguments of LTS. [A279].

LTS disagreed with the Examiner's confirmation of the patentability of Claims 9-10 and 20-22 and therefore appealed the decision to the Board. [A340-381]. LTS was fully successful on appeal inasmuch as the Board adopted all five of the proposed rejections of Claims 9-10 and 20-22 for which LTS had sought review (and which are set forth in greater detail below). [A13-14]. Notably, the Board concluded that "Bourgoin's table 21 is a material handling vehicle". [A13].

These five rejections [A13-14] had been proposed by LTS during the reexamination proceeding, and when these rejections were finally adopted by the Board on appeal, they constituted new grounds of rejection of Claims 9-10 and 20-22. [A14]. The Board went on to note that because the Board Decision included new grounds of rejection, Acme's only options were to i) reopen prosecution of Claims 9-10 and 20-22 or, alternatively, to ii) request rehearing. [A14-15]. The Board emphasized that since the Board Decision included new grounds of

7

rejection, the Board Decision could not be considered to be final for judicial review. [A14].

Instead of either i) reopening prosecution of Claims 9-10 and 20-22, or ii) requesting rehearing, Acme at first attempted (improperly) on June 14, 2013, to appeal the Board Decision to this Court. [A426-429]. The attempted (improper) appeal was eventually withdrawn by Acme and was ultimately dismissed by this Court on August 14, 2013. [A462-464].

However, prior to the withdrawal/dismissal of the attempted appeal, Acme separately requested rehearing of the Board Decision by filing on June 17, 2013, its "Patent Owner's Request for Rehearing Under 37 C.F.R. § 41.79" (the "Request for Rehearing") [A430-443]. In response to the Request for Rehearing, the Board issued its Rehearing Decision [A17-29] wherein it incorporated [A26] the Board Decision and amplified its prior conclusions regarding the disclosures of Bourgoin. Specifically, whereas the Board in its Board Decision had concluded that "Bourgoin's table 21 is a material handling vehicle" [A13], the Board in its Rehearing Decision more broadly concluded that "*Bourgoin discloses that its table is a material handling vehicle <u>and</u> alternatively suggests <u>and</u> teaches that its table can be used as a material handling vehicle*". [A20 (underlined emphasis added, Italic emphasis in original)]. The Board noted that its Rehearing Decision was

likewise a new decision and that any party may within one month of the Rehearing

Decision file a further request for rehearing.  [A26].

Instead of making a further request for rehearing by the Board or taking any

other action in the USPTO, Acme instituted this Appeal.

## VI.    SUMMARY OF ARGUMENT

As an initial matter, two issues are presented that will enable this Court to

dispose of the instant Appeal without reaching the merits of the arguments.  First,

and for the reasons set forth above, Acme neglected to exhaust its right to request

further rehearing before the Board, which is required before appeal can be taken to

this Court.   This Court should therefore conclude that it does not possess

jurisdiction over the instant Appeal and dismiss the Appeal in its entirety.  Second,

while Acme has requested in the instant Appeal that this Court overturn two of the

five new grounds of rejection that were identified by the Board in the Board

Decision and that were incorporated into the Rehearing Decision, Acme has not in

any fashion whatsoever challenged the other three new grounds of rejection of

Claims 9-10 and 20-22 as being obvious over Bourgoin in combination with other

references.  These three unchallenged new rejections constitute rejections of all of

the claims at issue in this Appeal.  Even if this Court were to overturn the two new

grounds of rejection that have been challenged by Acme, all of the claims at issue

would still remain rejected on the three unchallenged new grounds of rejection.

This Court should therefore reject this Appeal in its entirety because the limited relief sought by Acme is itself incapable of reversing the finding by the Board that Claims 9-10 and 20-22 are unpatentable.

If this Court should choose to address the merits of the arguments presented in the instant Appeal, ample grounds exist for upholding the determination by the Board that Claims 9-10 and 20-22 are unpatentable.  This Court should first conclude that the claim term "material handling vehicle" in the claims at issue should be interpreted according to "the broadest reasonable interpretation consistent with the specification".  Moreover, the Court should reject any contrary arguments that a narrowed interpretation of the claim term should instead be employed.  Nothing in the Acme Patent demonstrates an intention to deviate from the ordinary and accustomed meaning of "material handling vehicle" such as would be required in order to employ a narrowed interpretation.  An intention to deviate from the plain meaning of the claim term would have been demonstrated by expressions in the specification of manifest exclusion or restriction that represent a clear disavowal of claim scope.  No such clear disavowal of claim scope exists in the Acme Patent.  Rather the Acme Patent at most includes a broadly stated expression giving examples of what the term "material handling vehicle" includes, but it provides no suggestion whatsoever as to what (if anything) is *excluded* from this claim term.  The claim term "material handling vehicle"

should therefore be interpreted according to its broadest reasonable interpretation consistent with the specification.

This Court should additionally uphold the determinations by the Board that the claims at issue are unpatentable on the grounds that i) Bourgoin discloses a material handling vehicle and that ii) the term "material handling vehicle" as recited in the claims at issue encompasses the wheeled platform of Bourgoin. These determinations by the Board are supported by substantial evidence. This Court should furthermore reject Acme's arguments to the contrary because Acme's arguments rely upon a plurality of mischaracterizations.

First, Acme repeatedly mischaracterizes the scope of the claims at issue by arguing that the claims cover a system and method wherein a physical dimension of an article on a material handling vehicle is measured *while the material handling vehicle is in motion*. Acme's position is utterly untrue and is supported neither in the claims nor in the specification of the Acme Patent. Rather, the claims at issue cover at most a system and method that involve measuring the dimensions of an article when it is <u>loaded on</u> or <u>positioned on</u> a material handling vehicle.

Second, Acme's arguments rely upon a mischaracterization of the terms "active" and "actively" that are recited in the claims at issue. Acme notes that Bourgoin employs the word "passive" and argues from this that the wheeled

platform of Bourgoin does not lie within the scope of the term "material handling vehicle" because the claims at issue additionally recite the terms "active" and "actively". However, the file history of the Acme Patent makes clear that the claim terms "active" and "actively" (which do not appear anywhere in the specification of the Acme Patent) were argued by Acme to refer to a system that directly measures a dimension of an article rather than simply reading from a data storage a value for the dimension. Acme's characterization of the claim terms "active" and "actively" to mean the opposite of "passive" in an attempt to distinguish Bourgoin is therefore utterly false because the two terms instead refer to directly measuring a dimension. Moreover, Acme's claimed system and method that directly measure the dimensions of an article are incapable of distinguishing Bourgoin since Bourgoin unquestionably discloses directly measuring the dimensions of an article on its wheeled platform. This Court should therefore conclude that substantial evidence exists to support the Board's conclusion that Bourgoin discloses a material handling vehicle and that Bourgoin suggests and teaches that its movable platform is usable as a material handling vehicle.

Furthermore, this Court should conclude that the claims at issue are unpatentable because they would be obvious to a person of ordinary skill in the relevant art. Fig. 1 of Bourgoin depicts a wheeled platform, with a computer and a dimensioning system being mounted in a self-contained fashion on the wheeled

platform, and with an article being situated on the wheeled platform for purposes of having its physical dimensions measured.  If a person of ordinary skill in the field of article dimensioning viewed Fig. 1 of Bourgoin, this person would <u>not</u> conclude that the article would need to be removed from the wheeled platform before the wheeled platform could be moved.  Rather, such a person would see that the platform with wheels would be operable in the same fashion as a gurney and would be usable to move the article thereon from one location to another.

This Court should reject Acme's arguments regarding alleged "severe constraints" noted in Bourgoin or that Bourgoin "teaches away" from the wheeled platform being mobile.  Bourgoin mentions the phrase "protection against excessive vibrations" in the context of severe constraints, but such a phrase would suggest (if anything) that any such constraint would be overcome by providing *protection* to avoid excessive vibrations.  Also, any such alleged vibration shortcomings in Bourgoin are unrelated to the mobile and wheeled nature of the platform (which make it a "material handling vehicle").  A person of ordinary skill in the field of article dimensioning would immediately conceive of known devices such as shock absorbers and the like that would resolve vibration issues.  The Court should therefore conclude that Claims 9-10 and 20-22 are unpatentable since the subject matter thereof would have been obvious at the time of the (purported) invention to a person of ordinary skill in the field of article dimensioning.

## VII.  <u>ARGUMENT</u>

As for the Standard of Review, the Board's conclusions of law are reviewed *de novo*. *In re Glatt Air Techniques*, 630 F.3d 1026, 1029 (Fed. Cir. 2011); *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d 1359, 1363 (Fed. Cir. 2004).

The Board's findings of fact are reviewed under the substantial evidence standard. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Zurko*, 258 F.3d 1379, 1384 (Fed. Cir. 2001) *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). It is "less than the weight of the evidence but more than a mere scintilla of evidence." *In re Morsa*, 713 F.3d 104, 109 (Fed. Cir. 2013). "[W]here two different, inconsistent conclusions may reasonably be drawn from the evidence in record, an agency's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Id.* (internal citation omitted).

The determination of whether an invention would have been obvious under 35 U.S.C. § 103(a) is a legal conclusion based on underlying findings of fact regarding, among other things, differences between the prior art and the claims at issue. *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007); *Randall Mfg. v. Rea*, 733 F.3d 755, 1362 (Fed. Cir. 2013). Claim construction is a legal question

reviewed *de novo*. *In re Abbott Diabetes Care Inc.*, 696 F.3d 1142 (Fed. Cir. Sept. 28, 2012).

Anticipation under 35 U.S.C. § 102(b) is a question of fact that is reviewed for substantial evidence. *In re Gleave*, 560 F.3d 1331, 1335-36 (Fed. Cir. 2009).

## A.    This Court Does Not Have Jurisdiction Over Acme's Appeal.

A party to an *inter partes* reexamination proceeding who is dissatisfied with the Board's decision may not appeal to this Court until all parties' rights to request rehearing have been exhausted, at which time the decision of the Board is final and appealable by any party to the appeal to the Board.  37 C.F.R. §§ 1.983 and 41.81.

Acme is appealing the Board Decision dated May 18, 2013 and the Board's Rehearing Decision dated April 29, 2014.   [A17-27; Brief of Appellant Acme Scale Company, Inc. (hereinafter, "Brief"), p. 3].  In the Board Decision, the Board reversed the Examiner's decision that had been favorable to the patentability of Claims 9-10 and 20-22 in an *inter partes* reexamination relating to the Acme Patent.   In the Rehearing Decision, the Board denied in relevant part Acme's request for rehearing and reversal of the Board Decision.  [A1-16].

In the Board Decision, the Board specifically noted that its "decision contains new grounds of rejection" and "shall not be considered final for judicial review."  [A14].  The Board incorporated the Board Decision into the Rehearing Decision and designated the Rehearing Decision "in effect, a new decision" and

stated that "any party may within one month of the new decision, file a further request for rehearing of the new decision." [A26].

Acme did not file a further request for rehearing of the new decision set forth in the Rehearing Decision by the May 29, 2014, deadline. Instead, on June 24, 2014, Acme initiated its Appeal of the Rehearing Decision to this Court. [A465-466].

This Court does not have jurisdiction over this Appeal because Acme failed to exhaust its right to request rehearing before the Board. Acme was also entitled to request that the Acme Patent be remanded to the reexamination Examiner to consider an amendment to the rejected claims and/or new evidence related to the claims so rejected, along with any further comments or response thereto regarding the Rehearing Decision. *See* 37 C.F.R. § 41.77(d); *Pragmatus AV, LLC v. Facebook, Inc.*, 2012 U.S. Dist. LEXIS 14824 (N.D. Cal. Feb. 6, 2012). Acme failed to seek such rehearing or remand within the one month allowed by the Board but now attempts to recapture its rights by filing this Appeal. Indeed, in its Brief, Acme states that one issue on appeal is whether this Court "should remand the reexamination to the USPTO to allow amendment [of] claim 22 to place it in independent form for allowance." [Brief, p. 2]. Acme has missed its opportunity to seek further review of the Board Decision and/or the Rehearing Decision before the Board and has likewise missed its opportunity to seek remand to the

16

reexamination Examiner for further prosecution of Claims 9-10 and 20-22. Acme's inaction precludes the relief it now seeks before this Court.

Accordingly, this Court does not have jurisdiction because the Board's Rehearing Decision was not final and appealable.

**B.    The Claim Rejections That Were Imposed by the Board and Which Acme Has Not Challenged in this Court are Dispositive of the Non-Allowability of All of the Claims at Issue and are Thus Dispositive of This Entire Appeal.**

In the Board Decision dated May 18, 2013, the Board determined that certain claims were rejected as being unpatentable over Bourgoin individually and that certain claims were rejected as being unpatentable over Bourgoin in combination with other art.  [A13-14].  All of these rejections were stated to be new grounds of rejection in the Board Decision, and these rejections were incorporated into the Rehearing Decision.  [A26].  The rejections of the claims at issue (Claims 9-10 and 20-22) are specifically:

1.    Claim 9 and 20-22 are unpatentable under 35 U.S.C. § 102(b) as being anticipated by Bourgoin (Rejection 1).

2.    Claims 9 and 20-22 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Bourgoin (individually) (Rejection 2).

3.    Claims 9 and 20-22 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Bourgoin in view of Berg (Rejection 3).

4.    Claims 9 and 20 are unpatentable under 35 U.S.C. § 103(a) as being obvious over Bourgoin in view of Ridling (Rejection 4).

5.    Claim 10 is unpatentable under 35 U.S.C. § 103(a) as being obvious over Bourgoin in view of Berg and Andersen (Rejection 5).

[A13-24].

While Acme challenges the rejections of the claims over Bourgoin *by itself*, i.e., Rejections 1 and 2 [*see* Brief, pp. 13-22], Acme does not challenge the rejections over Bourgoin *in combination with other art*, i.e., Rejections 3-5. The claims at issue in this Appeal are Claims 9-10 and 20-22, and it can be seen that all of these claims are rejected in Rejections 3-5. [A13-14; A26]. These rejections have not been challenged by Acme. As such, even if this Court were to grant the relief sought by Acme in this Appeal by reversing Rejections 1 and 2 (which LTS strongly opposes), all of Claims 9-10 and 20-22 would *still* remain rejected under one or more of Rejections 3-5. Since all of the claims at issue in this Appeal will remain rejected on other grounds regardless of whether this Court grants the relief sought by Acme, this Court should dismiss the instant Appeal of Rejections 1-2 as being moot in view of the unchallenged remaining rejections, i.e., Rejections 3-5, under which all of the claims at issue additionally stand rejected.

Acme's challenges to the Board Decision and the Rehearing Decision are limited solely to Rejections 1-2. This is manifest since Acme repeatedly sets forth

as its primary argument that Bourgoin does not <u>disclose</u> "a material handling vehicle".  Acme says nothing with respect to the fact that the secondary references (Berg, Ridling, and Andersen) in Rejections 3-5 each *unquestionably* disclose a "material handling vehicle" in the form of a forklift.  [*See* A142 Fig. 14B; A163 col. 2, ll. 49-62; A188 at [0071]].  In fact, and as will be set forth in greater detail below, Acme seeks to narrow the interpretation of the claim term "material handling vehicle" to devices such as forklifts.

Acme makes no mention whatsoever of these three secondary references (Berg, Ridling, and Andersen) in its Brief.  Acme's Brief furthermore makes no mention whatsoever of any challenge to the combination by the Board of the contents of Berg, Ridling, and/or Andersen with the contents of Bourgoin in rejecting all of the claims at issue on the ground of obviousness in Rejections 3-5.

Acme makes at most only limited reference to Claim 10, and it can be seen that the only rejection by the Board of Claim 10 is in Rejection 5 wherein Claim 10 is rejected as being obvious over Bourgoin in view of Berg and Andersen.  Acme argues [Brief, pp. 6, 24] that the rejection of Claim 10 should be reversed because Bourgoin does not disclose a "material handling vehicle".  Acme's argument in this regard is flawed, however, since the rejection of Claim 10 by the Board did not rely upon a "material handling vehicle" being disclosed in Bourgoin.  Rather, the Board found a forklift having a mast in each of Berg [A142, Fig. 14B, forklift

(1400) having unnumbered vertical structure upon which retroreflectors R2 and/or R3 are situated] and Andersen [A177, Fig. 8, forklift (18) having sensor (20) on mast (64)]. Acme also mentions Claim 10 [Brief, p. 14, FN 4; p. 17] to argue its allowability by dependence from independent Claim 9. Acme further mentions Claim 10 [Brief, pp. 6, 25] as part of a general prayer for relief. None of the references to Claim 10 by Acme includes any challenge to the rejection of Claim 10 by the Board as being obvious under 35 U.S.C. § 103(a) over Bourgoin *in view of Berg and Andersen* (Rejection 5).

For the sake of completeness, it is noted that Acme erroneously identified Claim 10 at two locations in the "Statement of the Issues" portion of its Brief. [Brief, p. 2]. That is, (2) "Whether the Board erred in concluding that claims 9, 10, and 20-22 are not patentable under 35 U.S.C. § 102(b) based on Bourgoin" is incorrect since, as set forth above, only Claims 9 and 20-22 were rejected under 35 U.S.C. § 102(b). [*Id.*]. Likewise, Acme's issue (3) "Whether the Board erred in concluding that claims 9, 10, and 20-22 are not patentable under 35 U.S.C. § 103(a) based on Bourgoin" [*id.*] is incorrect, since the only rejection of Claim 10 is under 35 U.S.C. § 103(a) as being obvious over Bourgoin *in view of* the secondary references Berg and Andersen.

As mentioned above, Acme makes no mention whatsoever of these secondary references in its Brief and makes no challenge to their combination with

20

Bourgoin.  Acme even goes so far as to state [Brief, p. 19] its view of a *prima facie* case of obviousness as relating solely to a "reference" (i.e., singular) and mentions the singular word "reference" at three locations in its description of a *prima facie* case of obviousness.   However, Acme makes no mention whatsoever of the combining of a plurality of references to establish obviousness under 35 U.S.C. § 103(a) such as was employed in each of Rejections 3-5.   These issues were considered by the Board and were used to reject Claims 9-10 and 20-22, yet Acme failed to raise them in its Brief.

Since Acme has not challenged any of the rejections of Claims 9-10 and 20-22 on the ground of obviousness over Bourgoin *in combination with other art* as in Rejections 3-5, these remaining and unchallenged rejections are dispositive of this entire Appeal.  This Appeal is therefore requested to be dismissed since the relief sought by Acme is incapable of granting to Acme an allowance of rejected Claims 9-10 and 20-22 because all of the claims at issue would still remain rejected under Rejections 3-5.

    **C.**    **The Legal Standard to Employ when Interpreting a Limitation of a Patent Claim that is the Subject of a Reexamination Proceeding is "the Broadest Reasonable Interpretation Consistent with the Specification".**

During reexamination, claims are to be given their broadest reasonable interpretation consistent with the specification.  MPEP § 2111.01; *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1364.  This same standard of claim interpretation

applies to initial examinations of patent applications as well as to reexaminations of issued patents. *Id.* By giving the claims their broadest reasonable interpretation, the public interest is served "by reducing the possibility that claims, finally allowed, will be given broader scope than is justified." *Id.*, *citing In re Zletz*, 893 F.2d 319, 322 (Fed. Cir. 1989). The construction of claims during prosecution (and reexamination) in such a broad fashion is not considered to be unfair to the patent applicant (or the patentee in reexamination) because the applicant has the opportunity to amend the claims to obtain more precise claim coverage. *Id.* A patent applicant's ability to amend the pending claims in the USPTO is distinct from proceedings in federal courts on issued patents (such as in the context of an infringement proceeding) wherein the claims *cannot* be amended. *In re Zletz*, 893 F.2d at 321.

Acme professes to agree with this standard. However, Acme nevertheless goes on to argue in its Brief that a much narrower interpretation of the claim term "material handling vehicle" should be used instead of "the broadest reasonable interpretation consistent with the specification". Acme asserts that the Board erred in "expanding the interpretation of the term 'material handling vehicle' beyond the meaning from the intrinsic evidence in Acme's Patent". [Brief, p. 13]. Absolutely nothing in the phrase "the broadest reasonable interpretation consistent with the specification" suggests that the interpretation is somehow limited to "the intrinsic

evidence" in a patent or a patent application.   While the broadest reasonable interpretation is supposed to be "consistent with the specification", this simply means that a claim term cannot be interpreted in a fashion that is *inconsistent* with the specification. MPEP § 2111.01(I).

On the other hand, "a patentee may demonstrate an intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction representing a clear disavowal of claim scope".   *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1365 (internal citation omitted).   As such, in the absence of an expression of "manifest exclusion or restriction representing a clear disavowal of claim scope" which demonstrates that a meaning *other than* the plain meaning was intended from the outset, claims are to be given their plain meaning and thus given the broadest reasonable interpretation consistent with the specification.

Acme has sought and continues to seek an interpretation of the claim term "material handling vehicle" that is much narrower than the plain meaning and that instead reflects only the terminology that was employed in the Acme Patent. Acme asserts [Brief, pp. 11-12] that a "specific definition" of the term "material handling vehicle" is provided in the Acme Patent in its passage which states "The term material handling vehicle is meant to broadly include transportation vehicles such as, for example, but not limited to, a fork lift truck, a flatbed truck, or a pallet

truck." [A34, col. 2, ll. 38-41]. This sentence in the Acme Patent does not, however, constitute an expression of "manifest exclusion or restriction, representing a clear disavowal of claim scope" that would demonstrate that a meaning other than the plain meaning was intended from the outset. *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1365. Rather, devices such as forklifts, flatbed trucks, and pallet trucks are well known material handling vehicles (such as the forklifts shown in each of Berg, Ridling, and Andersen), so the inclusion of these conventional devices in the Acme Patent does not demonstrate that a meaning other than the plain meaning of "material handling vehicle" was intended from the outset.

While the ordinary and customary meaning of a term under examination may be evidenced by various sources, including the claims themselves, the specification, the drawings, and the prior art [*see* MPEP § 2111.01], nothing in the above-quoted passage from the Acme Patent suggests that the plain meaning of "material handling vehicle" is intended to be limited strictly to "a fork lift truck, a flatbed truck, or a pallet truck." Rather, the quoted passage uses broad, inclusive, and non-limiting expressions such as "broadly", "include", "such as", "for example", and "but not limited to". Moreover, the use of the phrase "is meant to broadly include" demonstrates that what follows is merely a series of examples of what a "material handling vehicle" *can be*, but does not say what a material

handling vehicle actually *is* and certainly provides no indication whatsoever of what (if anything) the term excludes.  As will be set forth in greater detail below, Acme asserts that the inclusion of the above-quoted passage in the Acme Patent represents an exclusion of the wheeled platform that is shown in Bourgoin.  However, Acme's argument must fail and the Board's decision [A12] should be upheld because this passage is insufficient to imbue the term with a special meaning dissociated from its ordinary and customary meaning.

Acme goes on to argue that this Court's decision in *In re Suitco Surface, Inc.*, 603 F.3d 1255 (Fed. Cir. 2010) supports its position.  However, this decision actually supports the position of LTS and the Board.    [Brief, pp. 12-13].  Specifically, Acme cites *Suitco* for the proposition that the "broadest-construction rubric coupled with the term 'comprising' does not give the USPTO an unfettered license to interpret claims to embrace anything remotely related to the claimed invention." *Suitco* at 1260.  However, the facts and ultimate decision by this Court in *Suitco* support LTS's position far more than they support Acme's position because *Suitco* involved an interpretation of a claim term by the USPTO that was directly contrary to the *literal content* of the claim tern.  Specifically, *Suitco* involved as a claim term "material for *finishing* the *top* surface of the floor" (emphasis in original), and this Court noted that:

> A material cannot be finishing any surface unless it is the
> final layer on that surface.  Otherwise, the material would

not be "finishing" the surface in any meaningful sense of
the word.

*Id.*  This Court went on to note that the proffered construction by the USPTO

"ignores this reality by allowing the finishing material to fall anywhere above the

surface being finished regardless of whether it actually 'finishes' the surface." *Id.*

*Suitco* thus stands for the proposition that an interpretation of a claim limitation

that is contrary to the literal content or the express language of the claim is

improper.  LTS has argued and continues to argue that the term "material handling

vehicle" should be interpreted according to its literal content and express language,

which is "the broadest reasonable interpretation consistent with the specification",

and the Board has correctly agreed with this position.

This Court has "cautioned against reading limitations into a claim from the

preferred embodiment described in the specification, even if it is the only

embodiment described, absent a clear disclaimer in the specification." *In re Am.*

*Acad. Sci. Tech. Ctr.*, 367 F.3d at 1369.  Acme is attempting to do precisely what is

cautioned against, i.e., read into the claims some limitation from the above-quoted

passage of the Acme Patent in order to give the claim term "material handling

vehicle" an interpretation that is improperly *narrower* than "the broadest

reasonable interpretation consistent with the specification".  In particular, Acme

asserts [Brief, p. 13] that the term "material handling vehicle" must be limited to

"transportation vehicles" and provides as examples of a transportation vehicle "a

fork lift truck, a flatbed truck, or a pallet truck" as mentioned in the Acme Patent. Acme goes on to assert that a person of ordinary skill in the art would understand the word "truck" to have a particular meaning in the context of "transportation vehicles". All of this is merely an attempt by Acme to improperly read into a claim a limitation from an embodiment described in the specification of the Acme Patent. Furthermore, the specification of the Acme Patent does not include any express limitations related to the term "truck" since it states that a transportation vehicle can include a bus. [A36, col. 2, l. 38]. It is also noted that Claim 8 of the Acme Patent as originally filed on April 18, 2005 recited: "the material handling vehicle being one of a fork lift, a lift truck, a flat bed, and a pallet truck." [A591 [C8]; *see also* A39, col. 8, ll. 22-24]. A "bus" and a "flat bed" further demonstrate that Acme's attempt to limit the phrase "material handling vehicle" to a "truck" is improper.

The Court is requested to uphold the well-established precedent of interpreting claim terms according to their "broadest reasonable interpretation consistent with the specification".

**D. Substantial Evidence Supports the Board's Determination that the Claim Term "Material Handling Vehicle" Encompasses the Wheeled Platform of Bourgoin.**

The Board determined that the broadest reasonable interpretation consistent with the specification of the claim term "material handling vehicle" encompasses the wheeled platform of Bourgoin. This is a factual determination and, as such, it is reviewed for substantial evidence. *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000). Under the "substantial evidence" standard, this Court must determine whether the Board's determination is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Zurko*, 258 F.3d 1379, 1384 (Fed. Cir. 2001) *quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

Acme challenges the rejection of Claims 9 and 20-22 on the ground of anticipation under 35 U.S.C. § 102(b) over Bourgoin. [Brief, pp. 13-17]. Anticipation under 35 U.S.C. § 102(b) is a question of fact that is reviewed for substantial evidence. *In re Gleave*, 560 F.3d at 1335-36. The Board's factual determination that Bourgoin discloses a material handling vehicle in rejecting Claims 9 and 20-22 on the ground of anticipation under 35 U.S.C. § 102(b) will thus be reviewed for substantial evidence.

Acme also challenges the rejection of Claims 9 and 20-22 on the ground of obviousness under 35 U.S.C. § 103(a) over Bourgoin (individually). [Brief, pp.

18-22].   This Court has said that obviousness under 35 U.S.C. § 103(a) is a question of law based on underlying *factual* findings.   *In re Sullivan*, 498 F.3d 1345, 1350 (Fed. Cir. 2007).   The Board's underlying factual determination that Bourgoin discloses a material handling vehicle in rejecting Claims 9 and 20-22 on the ground of obviousness under 35 U.S.C. § 103(a) will thus likewise be reviewed for substantial evidence.   As such, this Court's inquiry as to whether substantial evidence supports the Board's determination is pertinent to both the rejection of Claims 9 and 20-22 under 35 U.S.C. § 102(b) and the rejection of the same claims under 35 U.S.C. § 103(a).

In the Board Decision and the Rehearing Decision, the Board reasonably and correctly concluded that the broadest reasonable interpretation consistent with the specification of the claim term "material handling vehicle" encompasses the wheeled platform of Bourgoin.   [A13, A25].   This factual determination is supported by more than a mere scintilla of evidence.   As an initial matter, it is noted that many of Acme's arguments are based upon a blatantly false interpretation of the claim scope.   Specifically, Acme asserts at seven separate locations in its Brief that the claims include the limitation that the system (in Claims 9 and 10) and the method (in Claims 20-22) take measurements of an

article's dimensions *while the material handling vehicle is* <u>*in motion*</u>[1]. Acme's repeated suggestion that the claims recite dimensioning of an article while a material handling vehicle is *in motion* is utterly false.

Claim 9 of the Acme Patent is as follows:

> 9.    A system for actively dimensioning an article, the system comprising:
> a material handling vehicle,
> at least one active linear dimension detection device attached to a portion of the material handling vehicle, the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle; and

---

[1] "There is no indication that the table [of Bourgoin] can or ever would make measurements while it was moving. [Brief, p. 6]. "Bourgoin <u>never</u> discloses, teaches, or suggests putting an object, product, or article on the table and then rolling the table to transport the article, and then dimensioning the product while the table is in motion." [Brief, pp. 10-11, emphasis in original]. In describing Claim 20, Acme states "The 'article' is positioned or loaded onto the *material handling vehicle* and the active dimensioning detection system is used while it is moved with the vehicle." [Brief, p. 16, emphasis in original]. "No article can be accurately dimensioned on the Bourgoin table while the table is moving . . . ". [Brief, p. 17]. "A <u>reasonable</u> interpretation of the term 'material handling vehicle' in the Acme Patent, based on the entire Acme specification and distinct from the prior art, shows that it is used to move the articles and actively dimension them while moving." [Brief, p. 20, emphasis in original]. "While the table may include rollers, the rollers are only mentioned for movement 'in workshops or to other sites'. . .<u>not</u> to move products or articles and not to actively dimension the articles while transporting the articles." [Brief, p. 20, emphasis in original]. "While materials such as product or articles may *rest* on the table or be *processed through* the 'passive system' the products are not moved along <u>with</u> or transported by the table, must less dimensioned while moving." [Brief, pp. 20-21, emphasis in original].

30

> a computer system in communication with the at least one linear dimension detection device, the computer system being adapted to determine at least one linear dimension of the article.

[A38].

The recitation "the dimension detection device positioned to move with the vehicle and to actively detect at least one linear dimension of the article when the article is loaded onto the material handling vehicle" merely states that the detection device is positioned to *move with the vehicle* and actively detects a dimension when the article is *loaded onto the material handling vehicle*. There is no recitation whatsoever in Claim 9 of performing a dimensioning operation while the material handling vehicle is *in motion*.

> Likewise, the text of Claim 20 is set forth below:

> 20.    A method of actively dimensioning an article, the method comprising the steps of:
>> providing a material handling vehicle;
>> positioning at least one active linear dimension detection device on a portion of the material handling vehicle and retaining the device thereon to move with the vehicle;
>> positioning at least one article on the material handling vehicle; and
>> actively detecting at least one linear dimension of the article while positioned on the vehicle using the at least one linear dimension detection device.

[A39].

The recitation "actively detecting at least one linear dimension of the article while positioned on the vehicle" merely states that dimensioning occurs when the

article is *positioned on* the vehicle and says nothing whatsoever regarding the performance of a detection operation while the vehicle is *in motion*.

As noted above (FN 1, *supra*), Acme states or suggests at no fewer than seven different locations in its Brief that the claims at issue recite the performing of a dimensioning operation while a vehicle is in motion, and this is manifestly untrue. Moreover, the (false) notion of a material handling vehicle having an active linear dimension detection device situated on the vehicle and dimensioning an article *while the material handling vehicle is in motion* is utterly unsupported by the specification of the Acme Patent. While the Acme Patent states in the abstract that a vehicle having a detection device disposed thereon is a mobile dimensioning device [A36, col. 1, l. 66-col. 2, l. 2; and A37, col. 3, ll. 62-67], the only passage that describes the operation of such a mobile dimensioning device is at column 4, lines 3-4 [A37] which states "The plurality of detection devices 20 may be used separately or in combination to dimension product [*sic.*] on vehicle 16." The quoted phrase merely notes that the detection devices dimension a product when the product is on the vehicle, but it includes no disclosure whatsoever regarding such dimensioning occurring while the vehicle is in motion. As such, Acme's arguments that rely in whole or in part upon this falsehood should be rejected.

Acme asserts [Brief, p. 20] that a reasonable interpretation of the term "material handling vehicle" would be based upon the entire specification of the

Acme Patent and would be something "that is used to move the articles and actively dimension them while moving."  For the reasons set forth above, the "while moving" portion is clearly not a part of any appropriate interpretation of the term "material handling vehicle".  The phrase "and actively dimension them" would be a feature of the "active linear dimension detection device" and thus should likewise be ignored when interpreting the term "material handling vehicle".  The remaining portion of Acme's definition is thus that a material handling vehicle is something that "is used to move the articles".  Appellant would not necessarily disagree with this interpretation of the term.  Indeed, Patterson discloses that hand trucks and wheelbarrows, which are used to move articles, are both referred to as being a "material handling vehicle".  [A540, col. 1, ll. 7-9].  This is completely consistent with the plain meaning of the term "material handling vehicle", and it helps to demonstrate the absence of a special definition for the term.

The record has no probative evidence from one of ordinary skill in the art tending to show that the term "material handling vehicle" is defined in any specific fashion apart from its plain meaning.  The Examiner had sought to assert in the Action Closing Prosecution that the term "material handling vehicle" had a specific definition during the Examiner's employment with the United States Air Force from 1988 to 1990.  [A281-282].  However, the Board properly noted that the Examiner would have needed to file an affidavit or declaration in support of any

such statements that were based upon personal knowledge. [A8]. The Board went on to note that even if the Examiner's personal knowledge were set forth in an affidavit or declaration (which was not the case), the Examiner still had not demonstrated that the term "material handling vehicle" had this same specific definition in April of 2004 when the provisional application that resulted in the Acme Patent was filed. [*Id.*]

Acme goes on to argue [Brief, p. 14] that in a rejection on the ground of anticipation under 35 U.S.C. § 102(b), "there must be no difference between what is claimed and what is disclosed in the applied reference" and cites *Scripps Clinic & Research Found. v. Genentech Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). The significance of *Scripps* is more apparent when the full quotation is reviewed: "There must be no difference between the claimed invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the invention." *Id.* Patterson demonstrates that a person of ordinary skill in the art would view a hand truck or a wheelbarrow as a "material handling vehicle". A person of ordinary skill in the art would accordingly see "no difference between" the wheeled platform of Bourgoin and a material handling vehicle that has an active linear dimension detection device situated on it (as in Claims 9 and 20). [A38, A39].

As noted above, Acme argues that the term "material handling vehicle" should be interpreted in a fashion narrower than its "broadest reasonable interpretation consistent with the specification". Such a narrowed interpretation is contrary to the law and is inconsistent with the facts and the record in the instant application. As set forth above, the Acme Patent includes no "expressions of manifest exclusion or restriction representing a clear disavowal of claim scope" that would demonstrate that a meaning for "material handling vehicle" other than the plain meaning was intended from the outset. *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1365.

Acme has sought to narrow the applicable definition of "material handling vehicle" in a number of ways. Acme has argued [Brief, pp. 11-13] that the interpretation of "material handling vehicle" should be limited to the intrinsic evidence within the Acme Patent itself. Acme has furthermore argued that the broadly phrased remark in the Acme Patent that a material handling vehicle is "meant to broadly include transportation vehicles such as, for example, but not limited to, a fork lift truck . . ." should be a limiting definition. These efforts have been unavailing because the Acme Patent fails to include any "expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *In re Am. Acad. Sci. Tech. Ctr.*, 367 F.3d at 1365.

Acme has additionally sought to distinguish Bourgoin by falsely stating that the claim scope includes dimensioning *while the material handling vehicle is in motion.* [Brief, p. 11].  However, the claims demonstrate that they include no such recitation, and the specification includes no such disclosure.  In this regard, it is noted that the Acme Patent is directed toward two separate embodiments.  In one embodiment, a vehicle having an article thereon passes through a tunnel fitted with stationary dimension detecting scanners that scan the article and dimension it as the article and the material handling vehicle move past the scanners.  [A36, col. 2]. In the other embodiment, a dimension detection device is situated *on a vehicle*, and it is this second embodiment that is of interest in the instant Appeal because the claims at issue are directed toward this second embodiment.  [A37, col. 3].  As noted above, however, the only description of the dimensioning operation that occurs with this second embodiment is to state that the various detection devices "may be used separately or in combination to dimension product [*sic.*] on vehicle" [A37, col. 4, ll. 3-4].

Acme also attempts to distinguish the wheeled platform of Bourgoin from its own claimed system based upon alleged differences in function.  Acme argues [Brief, pp. 6, 8-10, 16-17, and 20-22] that Bourgoin is a "passive" system.  This argument is based upon the singular usage of the word "passive" in the following innocuous sentence of Bourgoin: "The system according to the invention has the

36

advantage that it is a passive system undisturbed by the surrounding industrial environment." [A128, col. 2, ll. 57-59]. Acme then notes that the claims at issue were amended during prosecution to additionally include the words "active" and "actively", which Acme contends distinguishes Bourgoin due to the alleged "passive" aspect of Bourgoin. [Brief, p. 16].

Specifically, Acme argues that "Claims 9 and 20 were amended during the prosecution of the Acme Patent to distinguish the use of the dimensioning device traveling with the vehicle as the vehicle is used to transport articles in an active, not passive, environment." [*Id.*]. The words "active" and "actively" are unquestionably the point of novelty of the claims at issue because the addition of *these words alone* resulted in the allowance of Claim 9. These same words plus other words were added to Claim 20 and likewise resulted in its allowance. However, the words "active" and "actively" that were added by amendment to Claims 9 and 20 are completely absent from the original specification of the Acme Patent. [A591 [C9] (original specification); A606 (amendment to Claim 9); A592 [C20] (original specification); A609 (amendment to Claim 20)]. Whether or not the words "active" and "actively" mean something that is the opposite of "passive" (as argued by Acme) is thus unsupported by the specification. It is therefore necessary to determine the meaning of the words "active" and "actively" as those words are used in the claims at issue.

The words "active" and "actively" in the claims at issue do *not* refer to a dimension device "traveling with a vehicle" as argued by Acme. Rather, they refer to a dimension detection device that <u>directly measures</u> a dimension of an article (such as by scanning the article itself), as opposed to wirelessly interrogating a radio-frequency identification (RFID) tag and obtaining from the RFID tag the stored *value* of the dimension. This is clear from the Acme Patent file history. [A611-612].

The claims at issue were rejected on the ground of obviousness under 35 U.S.C. § 103(a) over the combination of U.S. Patent No. 6,669,089 ("Cybulski") [A543-560] in combination with U.S. Patent Application Publication No. 2001/0041948 ("Ross") [A561-579]. Cybulski shows an RFID reader situated on a forklift and thus *traveling with* the forklift. [*See* A543]. Ross shows an RFID reader in a *stationary* position in a transfer facility. [A564, A574-575]. If the words "active" and "actively" that were added to Claims 9 and 20 actually had the meaning of "traveling with the vehicle" as argued by Acme [Brief, p. 16], the aforementioned amendment during prosecution would never have resulted in the allowance of the claims at issue. This is because the claims at issue were rejected over a piece of art (Cybulski) which showed an RFID reader on a forklift and thus traveling with the forklift. This was in combination with another reference (Ross) which showed an RFID reader in a stationary position in a transfer facility.

[A572].   A claim amendment to further recite that a detection device merely *travels with the vehicle* would not have distinguished Cybulski and thus would not have resulted in an allowance of the claims because Cybulski already disclosed a detection device that traveled with a forklift.

Instead, and as noted before, the words "active" and "actively" are intended to refer to <u>directly measuring</u> the physical dimensions of an article as compared with reading the *value* of the measurement from an RFID tag.  This is clear from the Acme Patent file history [A611] wherein Acme argued on December 1, 2009:

> the RFID readers and tags are a generally passive system in which the readers detect the RFID and information associated with the RFID.  The Cybulski reference does not have any form of active scanning to actively detect at least one linear <u>dimension</u> of the article.   In other words, the passive information detection system does nothing to actively detect, measure or read dimensions of an article associated with the vehicle.

(Emphasis in original.)  As such, the terms "active" and "actively" in the claims at issue refer to a *direct* measurement of a physical dimension as contrasted with a passive system wherein an RFID reader reads from an RFID tag the *value* of the dimension.

The true definition of "active" and "actively" (i.e., making a direct measurement) is greatly at odds with Acme's argued position that "active" and "actively" refer to a dimensioning device "traveling with the vehicle" and being

39

something that is the opposite of "passive". [Brief, p. 16]. Furthermore, it is expressly noted that Bourgoin *unquestionably* discloses *directly measuring a dimension of an article*. The cameras (18 and 19) of Bourgoin are usable to directly measure the dimension of objects [A129, col. 4, ll. 61-65].

The wheeled platform of Bourgoin thus is "active" and operates "actively" (to use the words of the claims at issue) since Bourgoin's mobile platform directly measures dimensions of articles situated thereon. The word "passive" is used at only one location in Bourgoin [A128, col. 2, l. 58], and its meaning is less than completely clear because the word would appear to be at odds with the otherwise disclosed mobility of the wheeled platform and its ability to directly measure dimensions of articles. However, there can be no question whatsoever that the word "passive" in Bourgoin does not serve to distinguish its wheeled platform from the claims at issue because Bourgoin unquestionably discloses cameras that directly (i.e., "actively") measure the dimensions of an article. The active/passive distinction sought to be advanced by Acme is therefore completely unavailing in Acme's effort to distinguish Bourgoin.

Acme additionally asserts that the wheeled table of Bourgoin is moved only in certain circumstances. For instance, Acme argues that the wheeled table is "only moved on its rollers so it can be placed somewhere else" [Brief, p. 6] and elsewhere argues that "While materials such as products or articles may *rest* on the

table or be *processed through* the 'passive system', the products are not moved along <u>with</u> or transported by the table . . ." [Brief, pp. 20-21 (emphasis in original)]. Acme notes the remark in Bourgoin regarding "severe constraints" in the context of "protection against excessive vibrations". Acme argues that this makes the wheeled platform of Bourgoin unsuited for use as a material handling vehicle. In essence, Acme concedes that the wheeled table of Bourgoin is mobile, and much of Acme's argument thus relates merely to the *extent* to which the wheeled platform is mobile.

Acme essentially argues that Bourgoin's wheeled platform is at most only minimally movable. However, Acme provides no evidence (from Bourgoin or otherwise) that Bourgoin's wheeled platform is suited only to limited movement or that it is incapable of movement and must remain stationary. Rather, Bourgoin describes its dimensioning system as being "placed on a table 21 fitted with rollers, so that it can be displaced to suit the user's needs" [A129, col. 3, ll. 42-44]. Bourgoin goes on to say that a table with rollers will "facilitate its displacement" [*see* A129, col. 4, ll. 15-16]. These statements are broad and could mean most anything. The expression "can be displaced to suit the user's needs" may be interpreted to mean that the wheeled platform is displaceable in any fashion that would suit the user's needs because the rollers "facilitate its displacement".

41

While Bourgoin makes some mention of "excessive vibrations" [A128, col. 2, l. 7], it is noted that the remark reads as follows:

> There may be severe constraints in the environment in which the system according to the invention is used:
> temperature from -15° C. to +50° C.;
> relative humidity of almost 100% under some usage conditions;
> protection of the electrical network that may be disturbed by large handling machinery;
> the machine may be moved in workshops or to other sites,
> protection against excessive vibrations during transport in alleys or between different sites.

[A128, col. 1, l. 66-col. 2, l. 8]. Bourgoin does not state that "excessive vibrations" are necessarily a problem. Rather, Bourgoin notes that "the machine may be moved in workshops or to other sites" [A128, col. 2, l. 6] and that its wheeled platform is provided "protection against excessive vibrations during transport in alleys or between different sites" [A128, col. 2, ll. 7-8].

It is additionally noted that Bourgoin does not disclose wheel locks or any other structures that would resist unintended rolling or movement of its wheeled table in an industrial environment. Such industrial environments typically include hard floor surfaces upon which wheeled structures can easily be rolled. If, as Acme argues, the wheeled platform of Bourgoin "sits in place" [Brief, p. 6], it would have been provided with some type of device to resist unintended movement. No person of ordinary skill in the art would deploy in an industrial

setting a *wheeled* device that should never be moved.  Rather, if the platform of Bourgoin were intended to be stationary it would either have been provided with wheel locks or would have been provided without wheels, and this is simply not the case in Bourgoin.

Rather, Bourgoin discloses a "system" having a processing unit, storage drives, and data processing cards.  Such a "system may be placed on a table fitted with rollers" [A127, col. 2, ll. 35-38] or such a system alternatively "may be coupled with an object conveying system" [A131, col. 7, ll. 16-17].  The electronic "system" therefore can be connected either with a wheeled platform or with a conveyor.  Since the "system" is intended for use in fields such as "express parcel transport, shipment of parcels; logistics services (stock management, storage, handling, warehouses, etc.)" [A129, col. 3, ll. 1-3], the entirety of Bourgoin is directed toward *movement*, and such movement is applied to articles that are received on the wheeled platform or on the conveyor.

The Board's factual finding is supported by substantial evidence, and Acme's arguments that seek to mischaracterize or minimize Bourgoin or to falsely characterize the scope of the claims at issue should be rejected.  The Board correctly concluded that the broadest reasonable interpretation consistent with the specification of the claim term "material handling vehicle" encompasses the wheeled platform of Bourgoin.  Since a "material handling vehicle" encompasses

the wheeled platform of Bourgoin, Claims 9 and 20-22 are anticipated, factually and thus legally, by Bourgoin under 35 U.S.C. § 102(b).  Moreover, for purposes of obviousness under 35 U.S.C. § 103(a), the underlying factual determination by the Board that Bourgoin discloses a material handling vehicle is likewise supported by substantial evidence.  The aforementioned Rejection 1 should therefore be sustained by this Court.

**E.    The Claims at Issue Would Have Been Obvious at the Time of the (Purported) Invention to a Person of Ordinary Skill in the Field of Article Dimensioning.**

The factual determination by the Board that a "material handling vehicle" encompasses the wheeled platform of Bourgoin is, for the reasons set forth above, supported legally and by substantial evidence.  This Court must determine whether the differences between the claimed invention and the prior art are such that the claimed invention as a whole would have been obvious to one of ordinary skill in the relevant art at the time of the (purported) invention.  35 U.S.C. § 103(a).

As noted above, Fig. 1 of Bourgoin depicts a wheeled platform, with a computer and a dimensioning system being mounted in a self-contained fashion on the wheeled platform, and with an article being situated on the wheeled platform for purposes of having its physical dimensions measured.  [A119; A129, col. 3, ll. 24-53].  If a person of ordinary skill in the field of article dimensioning viewed Fig. 1 of Bourgoin, this person would <u>not</u> conclude that the article would need to

44

be removed from the wheeled platform before the wheeled platform could be moved. Rather, such a person would see that the platform with wheels would be operable in the same fashion as a gurney or otherwise and would be usable to move the article thereon from one location to another.

Acme has nevertheless argued that Bourgoin "teaches away" from the use of the wheeled platform as a device that could be used to move an article that is situated thereon from one location to another. [A18-22]. More specifically, Acme identifies in Bourgoin the possible existence of "severe constraints in the environment in which the system according to the invention is used . . . protection against excessive vibrations during transport in alleys or between different sites". [A128, col. 1, l. 66-col. 2, l. 8]. This is not, however, a "teaching away" from the use of the wheeled platform of Bourgoin as a material handling vehicle. The first part of the quoted passage merely indicates that severe constraints exist *in the environment* where the wheeled platform is used. That is, the "severe constraints" are not disclosed in Bourgoin as being constraints on the use of its wheeled platform. Moreover, the second portion of the quoted passage notes "*protection against* excessive vibrations during transport" (emphasis added). If "excessive vibrations" could potentially be viewed as a problem with using its wheeled platform as a material handling vehicle, the notation in Bourgoin of "protection against" such excessive vibration suggests that a solution to such a problem either

exists or could be readily identified. This would, in turn, provide to the person of ordinary skill in the field of article dimensioning the motivation to solve any such problem that may exist with respect to "excessive vibrations during transport in alleys or between different sites" by providing "protection against" such vibration.

Furthermore, such a person of ordinary skill in the field of article dimensioning would be familiar with soft rubber tires, shock absorbers, and the like that are well known in many fields of endeavor as being useful in solving problems with vibrations. That is, the person of ordinary skill in the art viewing Fig. 1 of Bourgoin and giving consideration to the potential for "excessive vibration" would almost certainly think immediately of solutions such as soft tires, shock absorbers, and other such devices as being potential solutions that would provide "protection against" any such vibration problem. Bourgoin includes a precise identification of the potential vibration problem, and Bourgoin furthermore suggests the existence of "protection against" such a problem. These aspects of Bourgoin together provide to a person of ordinary skill in the field of article dimensioning a reasonable likelihood of success in curing any such problem with vibration.

As set forth above, substantial evidence supports the Board's factual finding that Bourgoin discloses all of the limitations recited in Claims 9 and 20-22. *See* MPEP § 2143. Moreover, the precise identification in Bourgoin of the potential

problem (excessive vibrations) would provide to a person of ordinary skill in the field of article dimensioning the motivation to solve any such vibration problem. Additionally, the suggestion in Bourgoin that "protection against" such excessive vibrations may exist or already exists would provide to the person of ordinary skill in the field of article dimensioning the reasonable expectation of success that any such problem could be solved. This reasonable expectation of success is further demonstrated by the broadly-phrased remarks in Bourgoin *et al.* that its wheeled platform "can be displaced to suit the user's needs" [A129, col. 3, l. 43] and that the system can be fitted to a wheeled platform "to facilitate its displacement". [A129, col. 4, ll. 15-16]. These are words that express a high degree of usability in an industrial environment for "express parcel transport", "shipment of parcels", and "handling", and they suggest a high likelihood of success.

Based upon the foregoing, and despite Acme's arguments to the contrary [Brief, p. 19], a *prima facie* case of obviousness has been established against Claims 9 and 20-22 over Bourgoin (individually). Claims 9 and 20-22 should therefore be found by this Court to be unpatentable on the ground of obviousness under 35 U.S.C. § 103(a) over Bourgoin (individually) for the reasons set forth above. Rejection 2 (mentioned above) should thus be sustained by this Court.

It is reiterated that Acme does not in any fashion whatsoever challenge the rejection of Claims 9-10 and 20-22 on the ground of obviousness over Bourgoin in

combination with the secondary references (Berg and/or Ridling and/or Andersen, each of which unquestionably discloses a forklift). Acme has argued in favor of the allowability of Claim 10 only on the ground that it is dependent from Claim 9. Acme's other remarks that appear to challenge the rejection of Claim 10 are either contained within general prayers for relief or were set forth in erroneous descriptions of the rejections of the claims on the ground of anticipation over Bourgoin and on the ground of obviousness over Bourgoin (individually).

Even though Acme has not challenged the rejection of Claims 9-10 and 20-22 on the ground of obviousness over Bourgoin in combination with other art (as in Rejections 3-5), these rejections should likewise be upheld for the reasons set forth above. A person of ordinary skill in the field of article dimensioning who perceives the alleged shortcoming of "excessive vibrations" in Bourgoin would be motivated to remove the self-contained computer and cameras from the wheeled platform of Bourgoin and to reposition them onto a wheeled forklift truck as shown in Berg and/or Ridling and/or Andersen. Forklift trucks are known for use in handling articles and for moving such articles from one location to another without excessive vibrations. The motivation to make such a combination in order to solve any such shortcoming regarding vibration exists in Bourgoin because Bourgoin identifies the specific alleged shortcoming. The person of ordinary skill in the art would also have a reasonable likelihood of success in resolving any such

shortcoming regarding vibration.  This is because Bourgoin suggests the solution to the problem (protection against excessive vibration).  Rejections 3-5 should thus likewise be sustained by this Court.

The claims at issue should thus remain rejected as being obvious and thus unpatentable under all of the new grounds of rejection under 35 U.S.C. § 103(a) that were set forth in the Board Decision and that were incorporated into the Rehearing Decision.  The aforementioned Rejections 2-5 should therefore be sustained by this Court.

## VIII.  <u>CONCLUSION AND STATEMENT OF RELIEF SOUGHT</u>

This Court should conclude that it lacks jurisdiction to hear Acme's Appeal because Acme failed to exhaust its right to request further rehearing before the Board.  Assuming *arguendo*, that this Court has jurisdiction, this Court should find that the claim rejections which were imposed by the Board and which Acme has not challenged in this Court are dispositive of the non-allowability of all of the claims at issue.   Additionally or alternatively, this Court should find that substantial evidence supports the Board's determination that the claim term "material handling vehicle" encompasses the wheeled platform of Bourgoin and that the relevant claims at issue are anticipated and obvious for the reasons set forth in the Board Decision and the Rehearing Decision.  There is no error in the Board's Rehearing Decision, and Acme's Appeal should be rejected.

Dated: <u>December 8, 2014</u>            <u>/s/ Bridget Heffernan Labutta</u>

**ECKERT SEAMANS**
  **CHERIN & MELLOTT, LLC**
Bridget Heffernan Labutta, Esq.
Two Liberty Place, 22nd Floor
50 South 16th Street
Philadelphia, PA 19102
Telephone: (215) 851-6623
Facsimile: (215) 851-8383
Email: blabutta@eckertseamans.com

***Attorney for Appellee***

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 8th day of December, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

> Grant H. Peters
> Daniel P. Albers
> BARNES & THORNBURG LLP
> One North Wacker Drive
> Suite 4400
> Chicago, IL  60606
> (312) 214-8332
>
> *Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

## <u>CERTIFICATE OF COMPLIANCE</u>
### With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>11,661</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

Dated: December 8, 2014          <u>/s/ Bridget Heffernan Labutta</u>
                                  Bridget Heffernan Labutta, Esq.

                                  ***Attorney for Appellee***